JOHN MUZI *vs.* COMMONWEALTH.

Norfolk.   November 8, 1956. — December 3, 1956.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Witness*, Expert witness.  *Evidence*, Qualification of expert witness.  *Practice, Civil*, Qualification of expert witness; Exceptions: whether error harmful.  *Error*, Whether error harmful.

Evidence that one checked sales and became familiar with the real estate market in a town in connection with a listing with him for sale of property in that town near property taken by eminent domain was erroneously excluded when offered in seeking to qualify him as an expert witness to testify to his opinion of the value of the land taken. [104]

In a proceeding for assessment of damages for a taking by eminent domain of property located on a main highway and largely zoned for manufacturing and business, it was error in the circumstances, while admitting in evidence an opinion of the value of the land taken given by a witness for the respondent as an expert, to exclude opinions of its value of two witnesses for the petitioner whose qualifications as experts were not materially different from those of the respondent's witness. [106]

Error in excluding from evidence opinions of value of witnesses for the petitioner at the trial of a proceeding for assessment of damages for a taking by eminent domain could not be said to be harmless because the jury took a view and the amount of a verdict for the petitioner was even less than the amount of injury from the taking testified to by the respondent's expert. [106]

PETITION, filed in the Superior Court on July 6, 1954, for assessment of damages for a taking by eminent domain.

The case was tried before *Donahue*, J.

*David A. Foley*, (*Frank Kilburn* with him,) for the petitioner.

*George Fingold*, Attorney General, & *Floyd H. Gilbert*, Assistant Attorney General, for the Commonwealth, submitted a brief.

WHITTEMORE, J.   The petitioner excepted to the refusal of the trial judge to permit two real estate appraisers to

testify to their opinions of the value of the petitioner's real estate in Needham before and after the taking of some of it, on August 5, 1953, for the purposes of the location of the new limited access highway known as Route 128. An appraiser for the respondent was permitted to testify to his opinion subject to the petitioner's objection and exception. The petitioner also excepted to the exclusion of testimony offered to support the qualifications of one of the appraisers.

The petitioner's real estate was located at the junction of the former location of Route 128 and Highland Avenue, and consisted of about 825,000 square feet of land of which some 249,405 square feet were zoned for manufacturing, 280,517 square feet were zoned for business, and 295,211 square feet were zoned for residences. There was located on the land zoned for manufacturing a large garage and showroom with "gasoline pumps, etc.," and a large parking space, and on the land zoned for residences there were three houses and outbuildings with them. The greater part of the land taken was in either the manufacturing zone or the business zone.

Each of the three experts was qualified in general as an appraiser of industrial, business or residential real estate through years of experience in buying and selling properties in and about Boston and greater Boston and appraising for court or other purposes. The experience of each with Needham real estate and Route 128 values was as follows: *Beck*, the petitioner's witness, within a month had testified in court as to the fair value of property in Needham; during the past year or two he had appraised in Needham for mortgage purposes twenty-nine properties; he had made appraisals along Route 128 for court cases not yet heard; "in connection with his work [of] appraising various properties out through Needham and the Needham area, he . . . [had] familiarized himself with the sales of other properties" and was "familiar with the sales of properties . . . in Dedham and Needham." *Donovan*, the petitioner's witness, had made appraisals of property in Needham in 1948–1949

but none within the past two years except that of the petitioner's property; "he visited Needham when he made the appraisal of the Moxie Company" (date not stated) whose offices are "on Route #128 just the other side of the railroad tracks from the . . . [petitioner's] property"; in connection with his work of appraisals and sales of property in surrounding towns bordering upon Needham he checked the real estate sales and market in Needham; a law firm had sought his advice in 1950 as to the proper rent of Maloney Motors across the street from the petitioner's property and he made a brief survey of the real estate market in Needham at that time; in 1953 he had been given a listing, for sale, of the property in the industrial development "diagonally across from the Muzi property" and, at the nearest point, approximately 600 feet from it. The trial judge excluded, subject to the petitioner's exception, Donovan's proffered testimony, shown cn offer of proof, that in connection with that listing he checked sales and became familiar with the real estate market in Needham. *Casey,* the respondent's witness, had made appraisals on Route 128 from the northern end to Westwood, and in connection with takings by the Commonwealth, in the town of Needham; he recalled by name five properties on Route 128 (without identification that they were in Needham) which he had appraised "in connection with the taking"; he had "appraised other properties, but cannot remember the names"; he had made a survey of the land taken by the State through the towns of Needham, Dedham and Westwood; he was when testifying the owner of 10,000 square feet of residential property in Needham and in 1953 he purchased on the thoroughfare parallel to Highland Avenue about 16,000 square feet of land, and removed a large embankment of sand and gravel and moved a house on the lot and sold it; he had within six months purchased land in Westwood, very close to Needham, close to Route 128 off Route 1A — a single lot of land, a house lot. On cross-examination, after his opinion of values was admitted, he testified that "he was interested in the purchase of a block

in the center of Needham occupied by a department store and other stores . . . and investigated the rentals and amount of business the department store did . . . [and] the assessed value of the property and gave an opinion to the prospective buyer . . . [but] did not make the sale."

There was no basis for excluding the evidence that Donovan in 1953 checked sales and became familiar with the real estate market in Needham in order to handle property, listed with him for sale, which was on Route 128 near to the petitioner's property. For present purposes therefore we consider Donovan's qualifications to include this experience.

The land taken was predominantly business and industrial in character. Two hundred three thousand eight hundred sixty square feet of the taken land were zoned for manufacturing, 92,450 square feet were zoned for business, and 40,836 square feet were zoned for residences. Casey testified that there was a particularly active real estate market in Needham in 1953 for industrial and business property, that the heavy industrial development in Needham was underway in 1953, and that prior to the taking there had been a number of sales in the industrial development across the street from the Muzi property and the Muzi property was like that property in that it had formerly been a sand and gravel pit and he took into consideration the sales in the industrial development property in arriving at his opinion of value.

Viewed in the light of the character of the land taken there are significant similarities in the important qualifications of the three witnesses and the differences are relatively unimportant. As stated all were well qualified in general experience. Casey may have done more appraising of land located on Route 128, but each had done such appraising. Each had made appraisals in Needham and had checked properties and values there. Neither Casey nor Beck testified expressly that the sites they had appraised on Route 128 were industrial or business sites. Donovan had appraised such sites and in Needham. Casey's personal par-

ticipation in sales of residential property in Needham would not have been likely to give him significantly more knowledge of business and industrial values on Route 128 than did Beck's many appraisals there, even if these appraisals by Beck were all of residential properties as they may have been. The fact that Donovan had not taken part in any sales of residential properties in Needham is not in the circumstances a valid distinction between his qualifications and Casey's.

The particular town in which business or industrial land on a main automobile route is located may be of much less importance in determining its value than is the fact of adjacency to such a highway. The Muzi land was so located prior to the taking. In valuing property on main highways which is available for business and industrial purposes, experience with properties having such availability on the same or similar ways in other towns and cities, or however located, would be at least as significant as experience with local values. The value of a site zoned for industrial or business use will manifestly be related substantially to such factors as its location on or near a highway or near to other transportation facilities and reasonable accessibility to a metropolitan center and to residential communities where its employees may live. Local factors such as the tax rate of course are relevant, but experience with residential property alone does not appear likely to give a real estate appraiser notable advantage in relating such factors to the value of a business or industrial site.

Now that local conditions do not have the controlling significance in many cases that they did have in the pre-automobile era (see *Manning* v. *Lowell,* 173 Mass. 100, 102) there is often more occasion for employing a qualified appraiser of wide experience than to rely only on persons who have local experience. Trial counsel undoubtedly have this in mind in preparing their cases.

If the trial judge had exercised his discretion to allow Beck and Donovan to testify there would have been no basis for a claim of error notwithstanding that neither had

bought or sold land in Needham. *Lyman* v. *Boston,* 164 Mass. 99. In determining the qualifications of an offered expert the trial judge has a wide discretion which is seldom disturbed. *Rubin* v. *Arlington,* 327 Mass. 382. *Conness* v. *Commonwealth,* 184 Mass. 541. *Amory* v. *Melrose,* 162 Mass. 556, 557–558. See *Muskeget Island Club* v. *Nantucket,* 185 Mass. 303; *Old Silver Beach Corp.* v. *Falmouth,* 266 Mass. 224. Here the significant criteria supported the admission of the testimony of Casey and, if he was to testify, also called for the admission of the testimony of the petitioner's witnesses. So far as there were differences in their qualifications this went to the weight of their testimony, properly to be dealt with in appropriate instructions. The rulings complained of deprived the petitioner of the opportunity, which another ruling gave to the respondent, to have the assistance of a reasonably qualified appraiser in establishing relevant values.

We do not agree with the respondent that the fact that the verdict was less than the loss in value testified to by the State's appraiser, the jury having taken a view, establishes that the petitioner was not prejudiced.

*Exceptions sustained.*