PETITION OF CATHOLIC CHARITABLE BUREAU TO DISPENSE WITH CONSENT TO ADOPTION. February 10, 1982. This is an appeal by the mother (the only interested parent) from a judgment of a Probate Court allowing the petition of Catholic Charitable Bureau, Inc. of Boston (CCB), pursuant to G. L. c. 210, § 3, to dispense with the need for her consent to the adoption of her daughter. The child was nearly three years old at the time of the initial hearing (June, 1980) in this matter. (At that time, the mother's other two children, aged six and four, were living, as now, in New York with the younger child's paternal grandparents.) At the request of the mother a supplemental hearing was held in March, 1981. See and compare *Care & Protection of Two Minors,* 12 Mass. App. Ct. 867

(1981). As a result of a finding by the Boston Juvenile Court that the child was in need of care and protection, CCB had been granted permanent custody fifteen months prior to the initial hearing. (This was the second such adjudication in that court.) The present foster parents are the prospective adoptive parents and had cared for the child for about fourteen months at the time of the second hearing. This case turns on whether any shortcomings of the mother and lack of parental experience on her part are sufficiently significant to make her unfit or seriously unsuitable to further the welfare and best interests of the child. See, e.g., *Custody of a Minor*, 383 Mass. 595, 601 (1981).

After complying with the mandate of *Custody of a Minor (No. 1)*, 377 Mass. 876, 886 (1979), to make "specific and detailed findings," the judge concluded that "the mother does not have the . . . fitness or readiness to assume parental responsibility for the child and that it is in the best interests of the child that the petition be allowed." The judge made over eighty specific findings of fact. See in this regard, Ginsburg, Termination of Parental Rights — Suggested Guidelines for Proposed Findings of Fact 25:10 B.B.J. 20 (1981). There is ample evidence to support these subsidiary findings on which the judge based his decision.

The mother makes no claim that the judge erred in concluding at the time of the initial hearing that she "was unfit to assume the custody of the child," and that if the child were returned to her, "the child would be at major risk of neglect." Rather, the mother argues that during the eight months between the initial and supplemental hearings she had made such significant emotional and psychological gains that her personal life and circumstances had progressed to a point where she was presently ready and able to assume the responsibility of being a parent. Apart from the numerous findings concerning sexual and drug-related conduct on her part in the past, two findings go directly to the critical issue whether the mother is "currently fit to further the welfare and best interests of the child." *Bezio* v. *Patenaude*, 381 Mass. 563, 576 (1980). One is that the mother has "high expectations of being provided emotional gratification from the child," but "frustration of these needs would have a destructive influence on her mothering function with the consequent risks of neglect or inadequate care of the child." Although this finding was made at the initial hearing, the judge specifically found that this condition still existed at the time of the second hearing, "although to a lesser degree." The other finding which has great significance in these circumstances is that the mother will not be able to assume an adequate parenting role without substantial support services. Standing alone, this finding might not be dispositive. Coupled, however, with the finding that the mother has in the past and still continues to "resist counselling" and other "appropriate assistance," it provides an adequate basis on which the judge could properly determine that the mother has "grievous shortcomings or handicaps that would put the child's welfare in the family milieu much at hazard."

*Petition of New England Home for Little Wanderers to Dispense with Consent to Adoption,* 367 Mass. 631, 646 (1975).

In determining current fitness it was permissible for the judge to assess prognostic evidence derived from an ongoing pattern of parental conduct. Cf. *Custody of a Minor (No.1),* 377 Mass. at 882. It could fairly be concluded from the evidence that during the periods that the mother was without custody she sought assistance and counselling, but once custody had been gained (or regained), she usually abandoned her therapeutic course. As late as the time of the supplemental hearing, there was evidence to support the judge's finding that "[s]ince the last hearing the mother has not had any formal therapy because she did not feel she needed it." When that finding is viewed in conjunction with the finding at the initial hearing that the mother "has become more consistent in seeking and accepting counselling which she clearly needs," her uneven pattern of conduct appears to be continuing into the present. We think that the judge could properly conclude on the basis of these well-supported findings that there is a high probability that "returning custody to the [biological mother] would be seriously detrimental to the welfare of the child." *Bezio* v. *Patenaude,* 381 Mass. at 575.

The finding that the mother would require the services of a professional counsellor if custody were to be returned takes on added importance in light of the judge's finding that the "removal of the child from the custody of the foster parents would have severe interfering consequences . . . and their ramifications would adversely affect the child immediately and throughout her life." See *Petition of Dept. of Pub. Welfare to Dispense with Consent to Adoption,* 383 Mass. 573, 591 (1981). Support for this finding is based on evidence that until the present the child has not had consistent care for any length of time, as the mother either had lost or given up custody three times since the birth of the child. At the time of the supplemental hearing, the child had been in the home of the prospective adoptive parents for almost fourteen months, and the judge found that the child "is well physically and is developing normally," and "[h]er capacity for human relationships is good [even though] she has been scarred emotionally and is insecure as a result." Moreover, denial of the instant petition might not result in the child's being immediately reunited with the mother even on the basis of a temporary placement. The judge also noted that the "interaction between the child and the [prospective adoptive] parents is excellent." From these findings it could fairly be concluded that " '[t]he passage of time has created a psychological bond between [the child] and [her] foster parents and in which [she] has nurtured and developed . . . [and t]o remove [her] from [her] foster parents at this time would have serious deleterious effects on [her].' " *Custody of a Minor,* 383 Mass. at 601.

The mother contends it was error for the judge to exclude expert testimony concerning the effect of adoption on the later development of children. It cannot be gainsaid that "it is within the discretion of the trial judge to determine whether to admit the testimony of an expert." *Consolini* v. *Commonwealth*, 346 Mass. 501, 503 (1963). See *Muzi* v. *Commonwealth*, 335 Mass. 101, 106 (1956). While we generally agree that opinion testimony of this nature could be relevant to the question of the best interests of the child, we discern no abuse of that discretion in this instance in precluding this particular expert from testifying. See *Commonwealth* v. *Banuchi*, 335 Mass. 649, 655, 656 (1957). See also *Campbell* v. *Thornton*, 368 Mass. 528, 541 (1975); *Cooper* v. *Richter*, 8 Mass. App. Ct. 878 (1979).

*Judgment affirmed.*

*James R. DeGiacomo* (*Judith K. Wyman* with him) for the mother.

*Paul K. Connolly, Jr.* (*Margaret S. Fearey* with him) for the Catholic Charitable Bureau of the Archdiocese of Boston, Inc.

*H. Crowell Freeman, Jr.*, for the minor.