CHARLES H. MCLAUGHLIN, trustee,[1] vs. BOARD OF
SELECTMEN OF AMHERST.

No. 93-P-717.

Hampshire. October 13, 1994. - February 24, 1995.

Present: DREBEN, PORADA, & IRELAND, JJ.

Further appellate review granted, 420 Mass. 1102 (1995).

*Evidence*, Expert opinion, Value. *Value. Easement. Real Property*, Easement. *Eminent Domain*, Damages. *Subdivision Control*, Access ways. *Waiver. Zoning*, Special permit.

In an action brought under G. L. c. 79, § 14, for an assessment of damages for the taking of the plaintiff's property by a town, the judge erred in not qualifying the town's expert witness, who had similar qualifications to the plaintiff's expert and who was allowed to testify on the subject of value, and the matter was remanded for a new trial. [166-168]

In a land damage case, the plaintiff failed as matter of law to establish the existence of an easement over adjoining property benefitting the plaintiff's property, and the judge erred in failing to properly instruct the jury on the issue of the lack of an easement. [168-170]

In a land damage case the judge should have instructed the jury that the plaintiff had the burden of showing, by a preponderance of the evidence, that the likelihood of obtaining subdivision approval and zoning relief was "reasonably probable, rather than merely possible" or that there was "a reasonable prospect" that such approval and relief would have been forthcoming. [170-172]

CIVIL ACTION commenced in the Superior Court Department on April 6, 1990.

The case was heard by *William H. Welch*, J., and a motion for a new trial was heard by him.

*Alan Seewald*, Assistant Town Counsel, for the defendant.
*William K. Danaher, Jr.*, for the plaintiff.

IRELAND, J. At its 1987 annual town meeting, the town of Amherst voted to take the plaintiff's property, a twenty-seven

---

[1] Of University Realty Trust and of the McLaughlin Family Trust.

and one-half acre parcel, by eminent domain for town conservation land. The town offered the plaintiff a $110,000 pro tanto award as compensation for the taking. The plaintiff sued for an assessment of damages under G. L. c. 79, § 14.

Following a jury trial in Hampshire County Superior Court, the plaintiff was awarded the sum of $275,000, based on the property's "highest and best use" as a residential subdivision consisting of single-family homes. The town has appealed the judgment and the denial of its motions for a directed verdict, and for a judgment notwithstanding the verdict or for a new trial. On appeal, the town argues that (1) the plaintiff failed to meet his burden of proving with a "reasonable probability" that he could have obtained the permits and approvals needed to develop his property to its highest and best use; (2) the trial judge committed error, both by refusing to instruct the jury on the plaintiff's burden of proving its ability to obtain an easement that would be needed in order to develop the property for this use, and by refusing to declare as a matter of law that the property is not benefitted by an easement the plaintiff claims over an adjoining property; and, (3) the trial judge committed error by refusing to allow the town's expert witness to give an opinion on the property's value. We agree, in substance, with the town's position and, therefore, reverse the judgment and remand for a new trial.

The record establishes the following facts. The plaintiff's property (the locus) is unimproved land consisting mainly of open woodlands and fields. The locus lies at the east end of Olympia Drive, a statutory private way owned by the University of Massachusetts (University), which dead-ends approximately 170 feet inside the locus. Olympia Drive (and a branch thereof named Fraternity Road) provides access from the public way to the locus and to the University's Fraternity-Sorority Park, the parcel immediately west of the locus (FSP parcel). For convenience of reference, a simplified diagram showing the locus and its surrounding area is appended to this opinion.

Abutting the locus on the south is a rectangular parcel currently owned by the town and held by it as conservation land. This parcel was previously owned by Development Corporation of America and is referred to as the DCA parcel. Abutting the DCA parcel on the west is a fourth parcel held by Village Park Associates (VPA parcel), also formerly owned by Development Corporation of America. The locus and the VPA parcel share a common boundary of about 200 feet near the northeast corner of the latter parcel. The easement claimed by the plaintiff benefits the DCA parcel to the east of the VPA parcel and runs east and west along the entire northerly edge of the VPA parcel to connect with East Pleasant Street, a public way running north and south at the west edge of the VPA and FSP parcels.

The locus is bounded on the east by unimproved land of the Vermont Central Railroad; and on the north by land of the University. There are no public ways accessible to the locus in either of these areas. Hence, the only access the locus currently has to a public way is over Olympia Drive (or Fraternity Road) to East Pleasant Street.

Under the town's zoning by-law, the locus and the FSP parcel comprise a fraternity residence zone (FR zone), where the only significant uses allowed by right (upon plan approval by the town planning board) are fraternity or sorority residences and nonprofit educational institutions.[2] Single family residences, the use to which both parties agree that the locus could most profitably have been put, are permitted within the FR zone but require a discretionary special permit from the town's board of appeals. In addition, any proposed use of the locus for more than one such residence would constitute a subdivision of that property into separate lots and, hence, would also subject the plaintiff to the requirements of the Subdivision Control Law, G. L. c. 41, §§ 81K et seq., and the town's subdivision rules and regulations. See G. L. c. 41, § 81L, definition of "subdivision." Like those of many other municipalities, the town's subdivision regulations limit the

---

[2]Under the "Dover Amendment," nonprofit educational uses within this, or any other, zone may not be limited or excluded. See G. L. c. 40A, § 3.

length of streets within proposed subdivisions which end in culs-de-sac and thus do not provide through access to public ways. As noted above, the locus is accessible to East Pleasant Street only by means of Olympia Drive — itself a dead-end way. Hence, any proposed extension of that way to serve the access needs of proposed residential lots within the locus would not comply with the town's subdivision regulations, and, therefore, the plaintiff would be required to obtain a waiver from the planning board.[3]

To avoid having to apply for a waiver, the plaintiff attempted to establish his rights to an existing easement over the VPA parcel southwest of the locus, that would enable him to extend Olympia Drive as a continuous loop through the locus and over the VPA parcel by way of the easement, to connect with East Pleasant Street south of that street's intersection with Olympia Drive.

The plaintiff's expert obviously recognized the importance of the easement. In rough form, he outlined four possible subdivision schemes for the locus, three of which depended upon the easement in order to extend Olympia Drive as a loop — either as a completed and fully accessible road according to one of the options, or as an emergency means of providing secondary access to the locus according to the other two options. His first scheme contemplated an extension of Olympia Drive as a dead-end with no secondary access, but he acknowledged that the town planning board would almost certainly not accept that scheme.

There was conflicting evidence as to the number of house lots that would realize the highest and best use of the property. Numbers ranging from three or four large "estate" lots, to as many as twenty-two smaller lots were submitted to the jury. The disparity is not crucial: under *any* proposal to di-

---

[3]Under Section V. G.1.d. of the town's subdivision regulations, dead-end roads within subdivisions may not exceed 800 feet. The plaintiff's expert conceded that the town would not be unreasonable in calculating the length of Olympia Drive from its beginning at East Pleasant Street which, from that point to its present terminus 170 feet inside the locus, well exceeds 800 feet. Hence, Olympia Drive could not be extended to accommodate additional house lots on the locus without violating the regulation.

vide the locus into two or more separate lots, the evidence shows that the town, more likely than not, would have required a means of secondary access.

Each side attempted to rely on its own expert to testify as to the value of the locus at the time of the taking. The plaintiff's expert, James Brody, a real estate appraiser, described the locus in detail and expressed his opinion that its highest and best use was for three or four large residential homesites. He further testified that, in his opinion, the value of the locus was $331,000 at the time of the taking.

Mona Barto, a real estate appraiser from Amherst, hoped to testify for the town and was also asked to give her opinion as to the fair market value of the locus at the time of the taking. The judge, however, excluded that testimony, based primarily on his finding that she lacked "practical knowledge" and experience buying and selling property in the Amherst area.

1. We begin with the town's claim that its expert witness, Barto, was improperly prevented from giving her opinion of value. The decision to qualify an expert to testify on a particular matter is based on findings of preliminary fact made by the judge acting within his discretion, *Commonwealth* v. *Garabedian*, 399 Mass. 304, 310 (1987), and will not be disturbed on appeal unless "there is no evidence to warrant the conclusion," or there has been an abuse of discretion. Liacos, Massachusetts Evidence § 7.10.1, at 413-414 (6th ed. 1994).

In this instance, however, we think that the judge, who cited Barto's lack of experience brokering real estate in the Amherst area, was in error, particularly where the plaintiff's expert, having similar qualifications, was allowed to testify on the same subject. "[I]t was error not to treat witnesses with similar qualifications in the same way," *Foley* v. *Foley*, 27 Mass. App. Ct. 221, 224 (1989). See also *Muzi* v. *Commonwealth*, 335 Mass. 101, 106 (1956). At the least, Barto was minimally qualified as a residential real estate ap-

praiser,[4] who should have been allowed to give her opinion of the locus's fair market value.

Furthermore, when qualifying an expert to give an opinion of real estate value, we see no meaningful distinction (as the judge evidently did) between a real estate appraiser with brokering experience in the particular locality and an appraiser without that experience. See *Lyman* v. *Boston*, 164 Mass. 99, 106 (1895) (no requirement that an expert should have bought, sold, or owned land in the locality); *Lee Lime Corp.* v. *Massachusetts Turnpike Authy.*, 337 Mass. 433, 436 (1958) (real estate broker or appraiser with sufficient professional knowledge and experience of other similar real estate in the area may testify); *Lavin* v. *Lavin*, 24 Mass. App. Ct. 929, 931 (1987) (expert who had "worked as an appraiser" and "who was in the process of earning professional designations in the appraisal field" may testify). The judge's distinction is even less apt when it is recalled that the plaintiff's expert had not actively bought or sold property in the Amherst area for some time.

Even if the qualifications of the plaintiff's expert were arguably somewhat more impressive, that fact should have

---

[4]The court conducted a lengthy voir dire hearing during which it was established that Barto had worked as a real estate appraiser for some twelve years in the Amherst area and, during that time, had completed numerous appraisals of residential and unimproved property (such as the locus) for area banks and municipalities. She was a member of several professional organizations, including the American Institute of Real Estate Appraisers from which she held the Residential Member (RM) designation. She had taught courses at the University of Massachusetts, sponsored by the American Institute of Real Estate Appraisers, on real estate appraisal and valuation and had also previously worked in the New York area as a real estate broker buying and selling real estate.

For his part, the plaintiff's expert, Brody, worked for the past thirty-five years primarily as a real estate appraiser and was also a licensed real estate broker in the Commonwealth, though his brokering experience occurred mainly from 1946 to the time when he began focusing on appraisal and valuation. Like Barto, Brody was a member of various professional organizations, including the American Institute of Real Estate Appraisers, from which he held the designation MAI (a rank senior to that held by Barto). Brody also held the highest designation from other professional organizations and, like Barto, had taught courses and seminars on real estate appraising.

gone merely to the relative weight given each expert's testimony by the jury. *Muzi* v. *Commonwealth*, 335 Mass. at 106. *Leibovich* v. *Antonellis*, 410 Mass. 568, 573 (1991). Improper exclusion of Barto's testimony forced the town to compete on a decidedly unlevel playing field and constituted reversible error.

2. We turn next to the related issues of the easement and of obtaining subdivision and special permit approval. Because the plaintiff's likelihood of receiving these approvals depended in significant measure on his rights in the easement, we examine that issue first.

In 1971, Development Corporation of America owned the entire area that now includes the DCA and VPA parcels. The easement first appears on record as a reservation in a deed executed March 22, 1971, by which Development Corporation of America conveyed the westerly half of its property, including the property's entire frontage on East Pleasant Street, to Village Park Associates, retaining the interior, or upland, portion. To assure its continued access to East Pleasant Street over the conveyed parcel, Development Corporation of America expressly reserved an "Access and Utility Easement," for itself that is described in meticulous detail through language in the deed and also by reference therein to a "Plan of Land and Easements in Amherst, Massachusetts" dated March 10, 1971. The easement depicted on the plan does not cross the benefitted parcel to reach or touch the locus. The deed also states that the easement is "for the benefit of other land of the grantor located east of the [conveyed] parcel [i.e., the DCA parcel]."

Thereafter, by deed executed June 17, 1971, Development Corporation of America acquired the locus from Fraternity-Sorority Park, Inc. By express language (and also by reference to a "Plan of Easements" dated May 26, 1971), the deed conveyed easements benefitting the locus over Olympia Drive and Fraternity Road. Sometime in 1972 or 1973 (the transcript does not make clear when), the plaintiff acquired the locus from Development Corporation of America through foreclosure of a mortgage he held on the locus that had been

granted him earlier by that corporation as part of the June 21, 1971, conveyance.

The easement reserved by Development Corporation of America in the March, 1971, deed plainly runs with the land comprising the DCA parcel and is appurtenant thereto. Nowhere does the deed itself, or the circumstances surrounding its execution, remotely suggest, as the plaintiff argues, that the parties to the deed intended an easement in gross, that was to be personal to the Development Corporation of America and unconnected with its ownership of the parcel and, therefore, possibly assignable by it to the plaintiff. Rather, the deed states that the easement is *"for the benefit of other land of the grantor* east of the [VPA] parcel" (emphasis supplied). See also Park, Real Estate Law § 273 (1981) ("An easement is not construed to be personal, or in gross, unless it cannot be presumed fairly as appurtenant to some estate").

It also is the long-established rule in the Commonwealth, as elsewhere, that after-acquired property, such as the locus, may not be added to the dominant estate (here, the DCA parcel) without the express consent of the owner of the servient estate (the VPA parcel). *Randall* v. *Grant*, 210 Mass. 302, 304 (1911). *Murphy* v. *Mart Realty of Brockton, Inc.*, 348 Mass. 675, 678-679 (1965). *Pion* v. *Dwight*, 11 Mass. App. Ct. 406, 410-411 n.5 (1981). Park, Real Estate Law, *supra* at § 279. The cited authorities further make clear that, absent such consent, use of an easement to benefit property located beyond the dominant estate constitutes an overburdening of the easement.

The plaintiff argues that consent of the servient estate holder is to be inferred from an unrecorded and unendorsed plan entitled "Village Park Subdivision, surveyed for Development Corporation of America" that is dated December 8, 1971. That plan arose *after* creation of the easement and was prepared for, and at the direction of, Development Corporation of America, not Village Park Associates. It is merely a conceptual road layout, simply names the imagined road "Village Park Lane," and the subdivision "Village Park Sub-

division," and, therefore, hardly establishes the consent of Village Park Associates. The plan has little or no probative value on the issue of consent and should have been excluded on relevancy grounds if offered solely for that purpose.

Based on the foregoing, we rule that the deeds offered by the plaintiff fail as matter of law to establish an easement over the VPA parcel benefitting the locus. There is no credible evidence in the record beyond the four corners of the deeds to support a contrary result. The judge's failure to properly instruct the jury on the lack of an easement was error.[5]

The plaintiff's theory of just compensation for the taking of the locus was based almost exclusively on its potential value as a residential subdivision.[6] It was his burden at trial, therefore, to demonstrate that obtaining approval for that use would not have been "unduly speculative or conjectural," *Skyline Homes, Inc. v. Commonwealth*, 362 Mass. 684, 686 (1972), such that it "would not figure materially in the reckonings of the [hypothetical] willing buyer and seller . . . expecting to pay and receive hard cash." *Id.* at 687. See also *Salem Country Club, Inc. v. Peabody Redev. Authy.*, 21 Mass. App. Ct. 433, 435 (1986) "[A]nticipation of favorable events [such as obtaining zoning relief and subdivision approval] may not be unduly speculative or conjectural. We are to deal with informed mercantile calculations, not hallucinations, or guesswork." *Ibid.*

It was clear at trial that the chief impediment to subdivision approval was the plaintiff's potential inability to provide

---

[5]The town requested, but was denied, a jury charge on the plaintiffs' burden of proving, by a preponderance of the evidence, his rights in the easement. The town also requested, but again was denied, general instructions on the law pertaining to establishment of easements by deed. The court left it for the jury to compare and interpret the various deeds and plans introduced at trial, to determine the plaintiffs' rights, if any, in the easement way.

[6]The one supposed "comparable" (the Hart estate) relied on by the plaintiff as evidence of the value of the locus contained fifteen residential lots that were allowed as of right under the town's zoning by-law. That property did not face the potential development and permit obstacles faced by the locus.

a secondary means of access to the locus. Hence, if the jury was permitted to find facts supporting the plaintiff's easement rights, then it could also have found that there was a "reasonable probability" that subdivision approval would have followed. Conversely, absent such easement rights, the plaintiff would have been forced to obtain waivers of the regulation limiting the length of subdivision roads that come to a dead-end and which do not provide secondary access. Ruling as we have that no easement rights (other than those over Olympia Drive and Fraternity Road) exist on the locus, the jury would have had to find that there was a "reasonable probability" that the plaintiff could have obtained the waivers. The statute pertaining to waivers, however, is permissive in scope and states only that:

> "A planning board *may* in any particular case, where such action is in the public interest and not inconsistent with the intent and purpose of the subdivision control law, waive strict compliance with its rules and regulations . . . ." (Emphasis supplied.)

G. L. c. 41, § 81R, as inserted by St. 1953, c. 674, § 7. The town's regulation tracks the statutory language. See *Meyer* v. *Planning Board of Westport*, 29 Mass. App. Ct. 167, 169-170 (1990), for a general discussion of c. 41, § 81R waivers. We are aware of no reported case or other authority that orders or requires a board to grant a discretionary waiver. Furthermore, there is no evidence on the record to suggest that the Amherst planning board had an established history or practice of granting such waivers.

Beyond the hurdle of obtaining subdivision approval with waivers, the plaintiff would also have been required to obtain a special permit from the town's board of appeals. In deciding whether to grant such a permit, the board is infused with considerable discretionary power, and its decision would not be disturbed on judicial review unless based "on a legally untenable ground . . . or is unreasonable, whimsical, capricious, or arbitrary." *Subaru of New England, Inc.* v. *Board*

*of Appeals of Canton*, 8 Mass. App. Ct. 483, 486 (1979) (citation omitted). The board of appeals could, therefore, have denied the plaintiff's special permit application, and its decision would have stood if, based on facts found de novo by a reviewing court, the board could have acted as it did. *Id.* Accordingly, the judge should have instructed the jury that the plaintiff had the burden of showing, by a preponderance of the evidence, that the likelihood of obtaining subdivision approval and zoning relief was "reasonably probable, rather than merely possible," *Salem Country Club, Inc.* v. *Peabody Redev. Authy.*, 21 Mass. App. Ct. at 436, or of showing that there was "a reasonable prospect" that such approval and relief would have been forthcoming. *Skyline Homes, Inc.* v. *Commonwealth*, 362 Mass. at 687.

To summarize, we hold that the judge committed reversible error by excluding testimony of the town's expert as to the value of the locus. Furthermore, we hold that, based on evidence in the record, the plaintiff has no easement rights over the VPA parcel. At trial, therefore, the plaintiff was required to, but did not, prove that there was a reasonable probability that he could have obtained waivers from the town's planning board and a special permit from the town's board of appeals and thereby obtain approval for a residential subdivision on the locus. The judgment is reversed and the matter is remanded for a new trial.

*So ordered.*