ROBERT F. McLAUGHLIN, trustee,[1] *vs.* BOARD OF SELECTMEN
OF AMHERST.

Hampshire. January 9, 1996. - March 29, 1996.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & FRIED, JJ.

*Evidence,* Expert opinion, Value. *Value. Easement. Real Property,* Ease-
ment. *Eminent Domain,* Damages. *Subdivision Control,* Access ways.
*Waiver. Zoning,* Special permit.

In an action for assessment of damages under G. L. c. 79, § 14, after a tak-
ing by eminent domain, the judge erred in finding the defendant town's
expert not qualified and excluding her testimony regarding the value of
the locus at the time of the taking, and the matter was remanded for a
new trial. [361-363]

At the trial of a land damage case in which the plaintiff presented no cred-
ible evidence to establish an easement benefiting the locus, the judge's
failure to instruct the jury as requested by the defendant town regarding
easements and the plaintiff's burden of proof was error [363-365]; further,
the judge should have instructed that the plaintiff had the burden of
proving there was a reasonable probability of obtaining subdivision ap-
proval. [365]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 6, 1990.

The case was heard by *William H. Welch,* J., and a motion
for a new trial was heard by him.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*William K. Danaher, Jr.,* for the plaintiff.

*Alan Seewald,* Assistant Town Counsel, for the defendant.

FRIED, J. The plaintiff owned a twenty-seven and one-half
acre parcel of land (locus). In 1987, the board of selectmen
(board) of the town of Amherst voted to take the locus by
eminent domain for town conservation land. The board of-

---

[1]Of University Realty Trust and of the McLaughlin Family Trust. Rob-
ert F. McLaughlin, successor trustee, is substituted as plaintiff in the place
of Charles H. McLaughlin who died on July 21, 1995.

fered the plaintiff a $110,000 award as compensation without prejudice to the plaintiff's right to bring an action for the full amount that he claims is due. The plaintiff sued for an assessment of damages under G. L. c. 79, § 14 (1994 ed.).

A judge in the Superior Court entered judgment for the plaintiff in the sum of $275,000 following a trial and jury verdict in that amount. The board appealed. The Appeals Court reversed the judgment of the Superior Court and remanded the case for a new trial. 38 Mass. App. Ct. 162 (1995). We granted the plaintiff's application for further appellate review and now reverse the judgment of the Superior Court.

I

The locus, owned by the plaintiff, is unimproved land located at the east end of Olympia Drive, a road which dead ends approximately 170 feet inside the locus. Olympia Drive is part of a loop-road system, including Fraternity Road, that provides only one means of access from the public way to the locus.[2]

At the time of trial the University of Massachusetts owned the land bounding the locus on the north, and the Vermont Central Railroad owned the land to the east. There are no public ways accessible to the locus in either of these areas. A rectangular lot owned by Fraternity-Sorority Park, Inc. (FSP parcel), bounds the locus on the west, and two parcels abut the locus on the south. The first parcel, covering most of the locus's southern boundary is a rectangular lot owned by the town at the time of trial as conservation land under G. L. c. 40, § 8C (1994 ed.). The Development Corporation of America (DCA) had previously owned this lot, and it is now referred to as the DCA parcel. The second parcel, this one sharing a 200-foot common boundary with the locus on the locus's southwest corner, is a parcel owned by the Village Park Associates (VPA parcel). Prior to 1971 DCA owned both the DCA parcel and the VPA parcel as one lot. DCA divided this lot in March, 1971, and conveyed what is now the VPA parcel to Village Park Associates. DCA reserved to itself an easement over the northernmost strip of the VPA

---

[2]For convenience of reference, a simplified diagram showing the locus and its surrounding area is appended to this opinion.

parcel for access to the public way. DCA acquired the locus in June, 1971. The plaintiff acquired it some time later.

Both the locus and the FSP parcel are located in a fraternity residence zone. Under Amherst's zoning by-law, the only significant uses allowed by right, upon plan approval by the planning board, are fraternity or sorority residences and nonprofit educational uses. Residential uses are not allowed as of right; they require a special discretionary permit from the town's zoning board of appeals. Moreover, in order to use the locus for more than one single-family residence, the plaintiff would require special subdivision approval in accordance with the G. L. c. 41, §§ 81K et seq. (1994 ed.). Furthermore, because a dead end may not exceed 800 feet under the rules and regulations governing the subdivision of land of the planning board, the plaintiff could not extend Olympia Drive into the locus without a waiver from the planning board.

In establishing the highest and best use of the property for valuation purposes, the plaintiff sought to prove the value of the land as a parcel consisting of more than one lot. As such a plan would likely require some form of access road system, the plaintiff sought to avoid the waiver requirement for extending a dead end beyond 800 feet by proposing to connect the road by a loop through the locus to the easement which runs from the DCA parcel over the VPA parcel to the public way. This proposal would also provide the locus with a secondary means of access to the public way other than just some form of Olympia Drive extension. In accordance with this proposal, the plaintiff sought to establish the value of the parcel at the time of the taking as one capable of subdivision.

Both the plaintiff and the board sought to introduce expert testimony regarding the value of the locus. While the trial judge allowed the plaintiff's expert to give an opinion, he excluded the opinion testimony of the town's expert. The judge found that the town's expert lacked "practical knowledge" and experience buying and selling property in the Amherst area.

## II

A. *Expert testimony.* The judge improperly excluded the testimony of the town's expert regarding her opinion as to the value of the locus at the time of the taking. "The crucial is-

sue," in determining whether a witness is qualified to give an expert opinion, "is whether the witness has sufficient 'education, training, experience and familiarity' with the subject matter of the testimony." *Letch* v. *Daniels,* 401 Mass. 65, 68 (1987), quoting *Gill* v. *North Shore Radiological Assocs.,* 10 Mass. App. Ct. 885, 886 (1980).[3] While the trial judge has discretion in determining whether an expert is qualified, the Appeals Court correctly noted that this discretion is not absolute. 38 Mass. App. Ct. at 166, citing P.J. Liacos, Massachusetts Evidence § 7.10.1, at 413-414 (6th ed. 1994). The judge's "ruling will be reversed on appeal only if it constituted an abuse of discretion or was otherwise tainted with error of law." *Commonwealth* v. *Devlin,* 365 Mass. 149, 152 (1974), and cases cited.

The judge refused to allow the town's expert, Monna Barto, to give her opinion as to the value of the locus. The judge conducted a lengthy voir dire hearing during which it was established that Barto, who lives in Amherst, had been a self-employed real estate appraiser and consultant since 1980. Prior to that she worked for two years as a real estate broker in upstate New York buying and selling property and then for three years as the staff appraiser at Amherst Savings Bank in Amherst. She had completed numerous appraisals of residential and unimproved property for area banks, municipalities, and relocation companies. She had two professional designations: the RM (residential member) designation from the American Institute of Real Estate Appraisers and the SRA (senior residential appraiser) designation from the Society of Real Estate Appraisers. She also taught courses in real estate appraisal and residential valuation at the University of Massachusetts, through the American Institute of Real Estate Appraisers.

Giving the full measure of deference to the judge's discretion in the light of his actually having heard Barto testify at the voir dire, we still cannot accept the reasons he gave for not qualifying her as an expert. The judge erred in ruling that Barto was not qualified because she did not have "practical

[3]Rule 702 of the Proposed Massachusetts Rules of Evidence, provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

knowledge" and "sales experience" which comes from "selling, not taking courses." It is not necessary that the expert "should have bought or sold or owned land" in the locality "about which he [or she] is testifying." *Lyman* v. *Boston*, 164 Mass. 99, 106 (1895). Although it is appropriate to consider the "significant similarities in the important qualifications" of the two experts in determining whether it was proper to allow one to testify and not the other, *Muzi* v. *Commonwealth*, 335 Mass. 101, 104 (1956); *Foley* v. *Foley*, 27 Mass. App. Ct. 221, 223-224 (1989), each expert should be qualified individually, with their relative qualifications going to the weight of their testimony. The locus is land which is commonly bought or sold; it is not peculiarly adapted for a special purpose, such as a limestone quarry and a plant manufacturing lime products as was the case in *Lee Lime Corp.* v. *Massachusetts Turnpike Auth.*, 337 Mass. 433, 434 (1958). See *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Auth.*, 335 Mass. 189, 193-196 (1956), and cases cited therein, limited on other grounds, *Ramacorti* v. *Boston Redevelopment Auth.*, 341 Mass. 377, 380 (1960). Although, as the plaintiff points out, this was the first time Barto sought to testify in court, this cannot be a sufficient reason for disqualification. In sum, all of the reasons the judge gave for disqualifying Barto might have been argued to some effect by the plaintiff to lessen the impact of her testimony on the jury. His reasons did not justify the judge's precluding the jury from hearing and weighing that testimony.[4]

B. *Easement.* The plaintiff asserts that the evidence presented at trial establishes that an easement running through the VPA parcel (VPA easement) should benefit the plaintiff, thereby increasing the value of the locus by providing a second means of access to the public way. The board disagrees and urges that, "[w]here the existence of an easement over abutting land was crucial to the plaintiff's proof of subdividability" of the locus, the judge erred in denying the town's "request for jury instructions as to the plaintiff's burden of proving the existence of the easement, as to the law relative to the creation of an easement by reservation, and as to the

---

[4]It is instructive to note that Barto's principal qualifications are significantly similar to those of the plaintiff's expert.

estate to which an easement created by reservation is appurtenant."[5]

As we have noted, prior to 1971 DCA owned both the DCA parcel and the VPA parcel as one lot. DCA divided this lot in March, 1971, and conveyed what is now the VPA parcel to VPA. DCA reserved to itself an "Access and Utility Easement" for access to the public way over the northernmost strip of the VPA parcel "for the benefit of other land of the grantor located west of the [conveyed] parcel [i.e., the DCA parcel]." But DCA did not acquire the locus until June, 1971, after it had conveyed the VPA parcel and reserved the easement. Prior to this time, DCA had no interest in the locus. Therefore, the locus is unquestionably after-acquired property. After-acquired property can benefit from an easement such as this one only if the easement is an easement in gross, a personal interest in or right to use land of another, or the owner of the after-acquired property receives the consent of the owner of the servient estate. A.L. Eno & W.V. Hovey, Real Estate Law § 8.2 (3d ed. 1995). As the Appeals Court properly stated, "It also is the long-established rule in the Commonwealth, as elsewhere, that after-acquired property, such as the locus, may not be added to the dominant estate (here, the DCA parcel) without the express consent of the owner of the servient estate (the VPA parcel) . . . [and] absent such consent, the use of an easement to benefit property located beyond the dominant estate constitutes an overburdening of the easement." (Citations omitted.) *McLaughlin* v. *Selectmen of Amherst*, 38 Mass. App. Ct. 162, 169 (1995).

The plaintiff responds that the terms of the easement reserve to the grantor, DCA, and to the public, an "easement for the purposes for which public ways in the Town of Amherst are now or may hereafter be used," and that as such the plaintiff should be entitled to use the easement for such purposes. We disagree. We construe the scope of an easement from the parties' intent, which we ascertain from the relevant instruments and the objective circumstances to which they refer. *Butler* v. *Haley Greystone Corp.*, 352 Mass. 252, 257

---

[5]The board requested an instruction regarding easements and the plaintiff's burden of proof. The judge denied this request stating, "I'm not going to get into a discussion on the legal effect of easements. That's up to counsel to prove one way or the other."

(1967). See *Boudreau* v. *Coleman*, 29 Mass. App. Ct. 621, 633-624 (1990). The easement by its terms does not create an easement in gross or even a public easement. The phrase "the purposes for which public ways in the Town of Amherst are now or may hereafter be used" presumably refers to the use of the easement for walking, bicycling, driving, and other uses for which public ways in the town are used, but there is no basis for interpreting it to enlarge the scope of the easement to benefit anything other than the dominant estate. The plaintiff also argues that consent of the servient estate holder to enlarge the easement may be inferred from the "Village Park Subdivision" plan. This plan, which refers to a conceptual road layout including the easement, is unrecorded, unendorsed, and dated December 8, 1971, after the sale of the property to VPA. This does not evidence consent.

As we find that the plaintiff presented no credible evidence to establish an easement that benefits the locus, the judge's failure to instruct the jury on the lack of an easement was error.

C. *Subdivision approval.* We agree with the Appeals Court's determination on this issue. In order to prove that the locus should be valued as a subdivision without the easement, it must be shown that there would be obtained a special discretionary permit from the town's zoning board of appeals and waivers from the town planning board. The judge should have instructed that the plaintiff had the burden of showing that there was a reasonable probability that he could obtain such approval for a residential subdivision of the locus.

The judgment is reversed, and the case is remanded for a new trial.

*So ordered.*

APPENDIX.