451 A.2d 738

**Elvin C. SMITH and Fern E. Smith, Appellants,**

v.

**James FULKROAD, Jack Fulkroad and Larry Fulkroad, t/d/b/a the Fulkroad Sanitary Landfill.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1981.

Filed Oct. 8, 1982.

Petition for Allowance of Appeal Denied May 10, 1983.

Bruce D. Foreman, Harrisburg, for appellants.

Arthur L. Goldberg, Harrisburg, for appellees.

Before BROSKY, WIEAND and MONTEMURO, JJ.

MONTEMURO, Judge:

This case concerns an equity matter in which the appellants, owners of farm property, are contesting but a single principal issue:[1] may the appellees, operators of a sanitary landfill, continue to use what was formerly a country lane located near appellants' farmhouse as a heavily-used access road for a daily parade of trucks hauling sixty tons of refuse onto a neighboring property?

It is apparent upon review of the record that the appellants have abandoned the argument that the use of the property as a landfill is improper. The evidence that the appellees correctly advertised, and that the necessary preparations to protect the health and safety of the neighborhood were complied with is overwhelming. The closing of the

---

1. The complaint originally requested an injunction that was more far-reaching. Specifically, the appellants wanted to restrain the appellees from (1) dumping refuse on the landfill site; (2) utilizing the lane for any commercial or industrial purpose; (3) operating the landfill in any manner. Appellants also requested "relief as equitable and proper."

landfill at the present time would indeed be expensive, inequitable, and monumentally inconvenient to the local municipalities who depend on it, as well as to appellees.

■ It is notable that this spectre of the harm that would be done by a reversal of that part of the decision of the lower court which concerns the use of the entire landfill site is kept alive only by the appellees. Their Brief spends six pages of its counterstatement of the case in discussing the value of the landfill and the care of preparation taken, but only a single page addresses the problem of the roadway. The expanded use of the road, however, presents a serious legal problem quite separate from the use of the landfill site as a whole. We affirm the lower court in its decision that the use of the former farm as a sanitary landfill is proper and may not be enjoined. However, as to the access road onto that property, we reverse the decision.

This action was taken in Equity and is therefore subject to the provisions of Pa.R.C.P. 1517, the pertinent terms of which are set forth below as follows:

### Rule 1517. The Adjudication. Notice

(a) The court shall make an adjudication and may do so before the testimony has been transcribed. The adjudication shall consist of (1) a statement of the issues; (2) a closely condensed chronological statement, in narrative form or in separate findings, of *all the facts which are necessary* to be known in order to determine the issues; (3) a discussion of the questions of law involved and the court's conclusions of law and (4) a decree nisi. (Emphasis supplied.)

Appellant contends, and we agree, that the lower court failed in its adjudication to make findings of *all* the facts which were necessary to be known in order to determine the issue as to the access road. The opinion *en banc* perpetuated that error, also stressing the use of the tract as a sanitary landfill and thereby subordinating the question as to the roadway to the outcome on the other issue. We therefore will set forth both the facts from the adjudication and from the record itself in the determination of the case.

The appellees performed their part in advertising the sanitary landfill and in preparing the farmland for its proposed use. The appellants certainly had constructive notice of the operations long before actual work on the site began. Once work began, appellant Fern Smith wrote a single protest letter to her district justice, but otherwise the appellants were passive until the day that widening and rebuilding of the dirt lane 200 yards from the Smith farmhouse was begun. Appellant and appellee agree that the appellants' protests were then swift and consistent. They immediately protested orally to the workmen and foreman, wrote to appellees twice through their attorney, caused a survey to be made establishing their ownership to more than half the original road surface, and, after six months of protest, they filed the complaint in this action, requesting the court to enjoin commercial use of the road.

The appellants state, without contradiction, that the use of the country lane as an enlarged roadway for transport of sixty tons of refuse daily was *not* advertised. As to this use of what they considered to be their own property, they never had notice prior to the start of the activity that began the improvements and widening of the road. They consider that as to this part of the project their protests were timely and are not barred by laches. We agree.

Laches is an equitable defense, and its "essence" has been held to be:

> ... estoppel, arising out of an inexcusable delay in the bringing of suit which prejudices the defendant's rights to such an extent that it would be an injustice to permit suit to be brought. *Pennsylvania Turnpike Commissioners v. Atlantic Richfield Co.,* 31 Pa.Cmwlth. 212, 375 A.2d 890, (1977) aff'd 482 Pa. 615, 394 A.2d 491, 482 (1978).

There was no inexcusable delay involved here. As to the landfill itself, appellants made little protest, but when the accessway located upon their own property was visibly becoming involved as a permanent part of the landfill project, they moved into action immediately. Appellees had not advertised their intent to incorporate the dirt lane into this

business, and they were informed of appellants' opposition prior to the expenditure of $8,000.00 on the roadway. Appellants' right to redress is therefore not barred by laches as to the issue of the accessway despite its applicability to the landfill site as a whole.

Once the complaint was filed, two hearings were promptly held, one on November 19, 1979 and a second on February 1, 1980. The testimony established the correctness of the appellees behavior in establishing the site as a sanitary landfill and the lack of protests by the appellants despite notice.

The original dirt lane was approximately ten feet wide; more than half the road surface was on the appellants' property, forming its southern boundary. The lane had been used by the public for many years, although traffic was sparse indeed. Seasonally, farm equipment used the road for planting and harvesting of crops; occasional horse and buggy traffic became occasional automobile traffic. Appellants' claim to private use was refuted by local witnesses who testified to using the road at will, but all agreed that traffic was quiet, occasional, and rural.

The court below stressed a United States Geological Survey Map, published in 1953, which called this lane a light-duty public lane and showed it as connecting two highways. Testimony established, however, that the lane was always an unimproved dirt road, repaired by the appellants over their section of lane, and that a bridge over a stream had washed out long before the 1953 survey and was never repaired, permanently severing the connection between the two highways.

The court did find that the commercial truck access had "altered the rural and residential character" of appellants' locale, that dust, dirt and noise have significantly increased, and that certain changes have occurred in the well water although these do not amount to significant pollution. In short, "a marked transformation in the former peaceful enjoyment" of their home has taken place.

■ The lower court found that more than half the surface of the original dirt lane belonged to the appellants, but that many years of unrestricted use of that lane by the public had created an easement by prescription. See *e.g. Wampler v. Shenk,* 404 Pa. 395, 172 A.2d 313 (1961). An easement, however, *does not confer any title to physical property. Cain v. Aspinwall,* 289 Pa. 535, 137 A. 610 (1927). What is more, the rights acquired in an easement by prescription are limited:

> [The easement] must be measured by the enjoyment of it, and [defendant] had no right to use it in a different and more extensive manner. *Pittsburgh & L. & E. RR. Co. v. Stowe Township,* 374 Pa. 54, 96 A.2d 892 (1953) and cases cited therein.

> [The easement] is limited by the user under which it is gained. *Donahue v. Punxsutawney Borough,* 298 Pa. 77, 148 A. 41 (1929).

> ... if an easement is used for any purpose inconsistent with that for which it was granted, the grantee becomes a trespasser to the extent of the unauthorized use. *Biber v. Duquesne Light Co.,* 235 Pa.Super. 428, 344 A.2d 628 (1975).

> A fundamental principle is that an easement for the benefit of a particular piece of ground cannot be enlarged and extended.... The purpose of this rule is to prevent an increase of the burden upon the servient estate, and it applies whether the easement is created by grant, reservation, prescription, or implication. *Percy A. Brown Co. v. Raub,* 357 Pa. 271, 293, 54 A.2d 35 (1947)

Advances in technology are considered to be "contemplated in the grant of an easement" 12 Pennsylvania Law Encyclopedia, 481, and testimony shows that the appellants never opposed such advances. Horse and buggy traffic slowly gave way to occasional automobile traffic and eventually automated farm equipment was also permitted. This accords with holdings that a right-of-way easement may be "used for all ordinary purposes in a reasonable manner," *Garan v. Bender,* 357 Pa. 487, 55 A.2d 353 (1947); see also

*McCully v. Pittsburgh Rys. Co.,* 44 Pa.Super. 316 (1910); *Taylor v. Heffner,* 359 Pa. 157, 58 A.2d 450 (1948).

The right-of-way easement in this instance could not be found to extend to cover an improved road, some twenty feet in width, handling heavy trucking in the amount of sixty tons of refuse a day.

Therefore, although the lower court was correct in finding the right-of-way had become "public", its equation of "public" with a right to alter significantly the grant of the easement was incorrect. As explained above, laches cannot apply to this issue, as the appellants' protests were immediate, constant, and predated expenditure of money and effort on the accessway. Out of a total expenditure of $200,000 on the project, an approximate $8,000 was spent on improvement of the dirt lane to make it suitable for use by dozens of heavy trucks on a daily basis. That sum was expended *after* timely objection was made.

We, therefore, hold that the appellants' suit requesting an injunction in this matter was properly taken and not barred by laches. The lower court was correct in refusing to grant an injunction against operation of the sanitary landfill as a whole, and that portion of the opinion below is affirmed. As to the accessway, however, the decision of the lower court is reversed, and an injunction against the use of the lane shall be entered.

However, as this matter is in equity and as the court has been requested to fashion relief as is equitable and proper, we hold that the permanent injunction shall not be enforced until six months after the filing of this opinion, in order to permit a new accessway to be created in another location while the landfill continues to operate.

The order of the court below is reversed, and an injunction shall issue against the appellees' use of the appellants' lane for commercial purposes.

WIEAND, J., concurs in the result.