[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 265 
These appeals arise out of a declaratory-judgment action commenced by J.A. Weeks, Sr., and Bonnie W. Weeks, husband and wife, against The Commons, LLC, Wolf Creek Industries, Inc., Summit Construction Company, Inc., and Remington, Inc. (hereinafter collectively referred to as "Wolf Creek"), challenging Wolf Creek's right to use an easement running through the Weekses' property from County Road 49 in Baldwin County to the west bank of Spring Branch, known locally as part of Van Wezel Lane ("the Lane"). From a judgment declaring that Wolf Creek has a right to use the Lane, but broadly restricting that right, the Weekses appealed (case no. 1041189) and Wolf Creek cross-appealed (case no. 1041264). We affirm that aspect of the judgment challenged in the appeal, but reverse that aspect of the judgment challenged in the cross-appeal and render a judgment for Wolf Creek.
 I. Factual Background
All the land involved in these proceedings originally belonged to Rae Breed Walker and her husband, Ralph A. Walker. The land lies in Baldwin County along the north side of the Magnolia River and on either side of a small tributary known as Spring Branch. Running along the western border of the Walker property is County Road 49.
In 1934, the Walkers began subdividing their property. In September of that year, the Walkers sold a tract east of Spring Branch to James Graham. In 1935, the Walkers conveyed a similarly situated tract to Josiah Test.
On March 29, 1939, the Walkers conveyed all their land onthe west bank of Spring Branch to George N. Trich and Minnie B. Trich. Thus, following that conveyance, the Trich tract consisted of land bounded on the west by County Road 49, on the east by Spring Branch, and on the south by the Magnolia River. The Walker-to-Trich deed expressly "except[ed] therefrom a private lane across said lot and along the North bank of Magnolia River," namely, the Lane.
Through a succession of conveyances, the Trich tract passed to the Weekses on May 31, 1991. Each of those conveyances expressly reserved an easement in the Lane by "except[ing] a private road running along Magnolia River." The Weekses' deed contained an additional description of the Lane as being "an easement for a road right of way over and across the Southern portion thereof, roughly parallel to the Magnolia River, that affords ingress and egress to ownership lying East of Spring Branch, to and from County Highway No. 49."
Meanwhile, the Walkers continued to subdivide their propertyeast of Spring Branch. In 1939, the Walkers conveyed to Dr. Arthur Owens a tract of land south of the tract conveyed to Test. By a separate conveyance dated December 2, 1939, the Walkers conveyed to Dr. Owens a perpetual easement of right-of-way, described, in pertinent part, as running along the north border of the Graham tract to the east border of the Graham tract. As defined by that conveyance, the Lane, once it crossed Spring Branch took a slight northward turn and the eastern end of the Lane terminated at the western border of land still owned by the Walkers, which now forms the eastern border of the land owned by Wolf Creek. The land granted to Dr. Owens forms a small portion of the land now owned by Wolf Creek. However, the Weekses do not challenge the right of persons living specifically within the metes and bounds of propertyformerly owned by Dr. Owens to use the Lane. In January 1941, the Walkers conveyed to George A. Brown a tract of land bordered on the *Page 267 
west by Spring Branch and lying between the tracts conveyed to Graham and Test.
On December 8, 1945, the Walkers conveyed to M.J. Moore and T.G. Moore 130 acres abutting the properties of Graham, Brown, Test, and Owens on the east, the Magnolia River on the south, and United States Highway 98 on the north. The deed did not mention the Lane.
In March 1947, the Walkers conveyed to Earnest H. Kline and Josephine Kline a tract of land to the north of, and abutting, the Graham tract. The Kline conveyance expressly excepted the easement conveyed to Dr. Owens, which thus ran along the southern border of the Klines' tract.
In 1954, the Moores conveyed to Norman Van Wezel and Hannah Van Wezel 19.3 acres in the southwest portion of the tract the Moores had purchased from the Walkers. In June 1973, Hannah Van Wezel, then a widow, subdivided that 19.3 acres into 10 lots and recorded the subdivision in a plat map creating Magnolia Springs Estates. From 1985 through 1988, all 10 lots were sold, and some of the lots were occupied by residents.
Ultimately, Wolf Creek purchased all the land the Moores had conveyed to the Van Wezels. Additionally, Wolf Creek purchased land in the northwest portion of the tract the Walkers had conveyed to the Moores, lying north of the 19.3 acre Magnolia Springs Estates, as well as the tract conveyed by the Walkers to Dr. Owens. Consequently, the land owned by Wolf Creek abuts highway 98 on the north, Magnolia River on the south, and the east end of the Lane, which runs westward to County Road 49. Wolf Creek subsequently filed a "Declaration of Condominium of The Commons, a Condominium," dedicating its property to residential and commercial development. The Commons consists of 46 planned single-family residential units, two duplex units, for a total of 50 residential units, and four commercial units. At the time of the trial of this case, Wolf Creek had sold only a few of the residential units to individual residents of The Commons.
The Weekses objected to the use of that portion of the Lane crossing their property,[1] particularly during the "construction phase" of The Commons, by parties associated with Wolf Creek, and they commenced this action. They sought a judgment declaring that Wolf Creek owns "no right, title, or interest in" the Lane and permanently enjoining Wolf Creek from using the Lane. After a bench trial, the court entered a final judgment, concluding, in pertinent part, that "the owners of The Commons, as the same now exists, are entitled to use [the Lane] . . . by virtue of the express grant of the easement . . . appurtenant." The court made this holding subject, however, to the following exceptions:
 "1. The right of use shall exist only in favor of the owners of the record title to the 50 single family residential dwelling units in The Commons, together with those dependents of such owners who are related by blood or marriage to the owner and whose principal residence is in the unit.
 "2. No right of use shall exist in favor of any owner of any part of the Commercial site in The Commons, including that designated on the plat as Unit C-1.
 "3. No independent right of use shall exist in favor of guests or invitees of owners of residential dwelling units in *Page 268 
The Commons, including those providing repairs or maintenance, utility or government employees, contractors, or family members other than those specifically included above.
 "4. The purpose of any use shall be only for ingress to or egress from residential dwellings in The Commons and county road 49.
 "5. No use may be made for the installation of utilities or other incidental uses.
 "6. No use may be made for commercial or developmental purposes, including moving garbage from The Commons to a collection point at county road 49.
 "7. Any use must be by passenger vehicle with a normal seating capacity of not more than 8 passengers, and no use may be made by any trailers, panel trucks, or buses.
 "8. No pavement, hard surface or other improvement may be constructed on the easement which is more than 8 feet in width.
 "9. The [Weekses], their heirs or assigns, shall be entitled to construct on the easement reasonable speed bumps or other similar traffic controls, with appropriate warnings.
 "10. The property owners association in The Commons shall be required to keep and maintain in place a gate or access control similar to that which is presently in place at the east end of Van Wezel Lane and to take all steps within its power to ensure compliance by its members with the restrictions contained herein, including making keys available only to those owners in The Commons who are entitled to the use of Van Wezel Lane.
 "11. The [Weekses], their heirs or assigns, shall be authorized at their discretion to construct and maintain a gate or other access control at the west end of Van Wezel Lane and to make keys available only to those entitled to the use of Van Wezel Lane."
In case no. 1041189, the Weekses appeal from that portion of the judgment holding that "the owners of The Commons, as the same now exists," have an express easement appurtenant over the Lane. In case no. 1041264, Wolf Creek cross-appeals from that portion of the judgment limiting its use of the Lane. We first address issues raised in the Weekses' appeal.
 II. Case No. 1041189
In their appeal, the Weekses present two issues that we must address. First, they contend that the trial court erred in holding that their property is burdened by an express easement appurtenant to all the property acquired by Wolf Creek in thechain of title of the Van Wezels. Second, they argue that the trial court erred in failing to further limit
the use of the Lane to the owners of units located on property acquired by Wolf Creek in the chain of title of Dr.Owens, which comprises only units 33 and 34 of The Commons as it currently exists. The second issue will be addressed in connection with Wolf Creek's cross-appeal.
 A. Standard of Review
"`Where evidence is presented to the trial court oretenus, a presumption of correctness exists as to the court's conclusions on issues of fact; its determination will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.'" Pollard v. Unus Props.,LLC, 902 So.2d 18, 23 (Ala. 2004) (quoting AmericanPetroleum Equip. Constr., Inc. v. Fancher,708 So.2d 129, 132 (Ala. 1997)). "However, as to issues of law, or `where there are no disputed facts and where the judgment is based entirely *Page 269 
upon documentary evidence, no such presumption of correctness applies; our review is de novo.'" Padgett v. Conecuh CountyComm'n, 901 So.2d 678, 685 (Ala. 2004) (quoting AlfaMut. Ins. Co. v. Small, 829 So.2d 743, 745 (Ala. 2002)). Moreover, no presumption of correctness attaches to the trial court's conclusions of law or to its improper application of law to the facts. American Petroleum Equip.,708 So.2d at 132.
All parties concede that the proper standard of review of the issue on appeal in case no. 1041189 is de novo. This is so, because its resolution involves merely the application of legal principles to the documentary evidence presented.
 B. Analysis
An easement may be acquired "(1) by express conveyance, (2) by reservation or exception, (3) by implication, (4) by necessity, (5) by prescription, (6) by contract, and (7) by reference to boundaries or maps." Helms v. Tullis,398 So.2d 253, 255 (Ala. 1981) (emphasis added). The Weekses concede that their land is burdened by an express easement appurtenant to the tract conveyed by the Walkers to Dr. Owens. In other words, they acknowledge the existence of a "dominant tenement" in the hands of the successors in title to Dr. Owens.
 "The meaning of the term `dominant tenement' and the distinction between an appurtenant easement and one in gross has been described as follows:
 "`A parcel of land benefited by an easement is described as the dominant estate or the dominant tenement. By definition, an easement appurtenant is created for the advantage of the owner of the dominant estate. When an easement is in gross, no dominant estate exists.'
 "Bruce Ely, The Law of Easements and Licenses in Land, Para. 2.02 (1988). The purpose of appurtenant easements is to benefit the owner of the dominant tenement. 3 Powell on Real Property, 34-21 (1992)."
Gowen v. Cote, 875 S.W.2d 637, 641 n. 4 (Mo.Ct.App. 1994) (emphasis added).
The Weekses contend, however, that "a private easement appurtenant to a parcel of land cannot be extended to other properties by incorporation in a larger land development." Weekses' brief, at 19. Specifically, they argue that "[t]he express grant of the easement appurtenant to [Dr. Owens's tract]cannot be extended to all of the property within TheCommons." Weekses' brief, at 22 (emphasis added). The Weekses misapprehend the generally accepted legal principle invoked by the facts in this case.
To be sure, "[i]f the grant is for the benefit of some particular land it can not be used to accommodate some other tract of land adjoining or lying beyond. `"One having a right of way appurtenant to certain land can not use it for the benefit of other land."'" Loveman v. Lay,271 Ala. 385, 392, 124 So.2d 93, 99 (1960) (quoting West v.Louisville Nashville R.R., 137 Ala. 568, 571,34 So. 852, 853 (1903) (emphasis added)). Loveman — on which the Weekses rely — involved property otherthan a subdivision of the dominant tenement.
However, "the law favor[s] changes and improvements for the benefit of the dominant estate so long as the manifest intent of the parties does not disallow the changes and the burden to the servient tenement is not increased." Hubble v. Cache CountyDrainage Dist. No. 3, 123 Utah 405, 410, 259 P.2d 893, 896
(1953). Thus,
 "[w]here a dominant estate is divided into separate parcels, unless specifically reserved, the rights to an appurtenant *Page 270 easement pass to the subsequent owners of each subdivided parcel, even if the resulting dominant and servient estates are not contiguous `so long as no additional burden is imposed upon the servient tenement by such use.'"
Higgins v. Douglas, 304 A.D.2d 1051, 1053,758 N.Y.S.2d 702, 705 (2003) (quoting Cronk v. Tait, 279 A.D.2d 857,858, 719 N.Y.S.2d 386, 387 (2001) (emphasis added)). See VonMeding v. Strahl, 319 Mich. 598, 611, 30 N.W.2d 363, 370
(1948) ("An appurtenant easement exists for the benefit of the dominant tenement as a whole, and not alone for any particular part thereof. Thus, if the dominant estate is divided, the right is not destroyed. The owner or assignee of any portion of that estate may claim the easement so far as it is applicable to his part of the property, so long as an unreasonable burden is not imposed upon the servien[t] estate."); 25 Am.Jur.2dEasements and Licenses § 92 (2004) ("As a general rule, if the dominant tenement is transferred in separate parcels to different persons, each grantee acquires a right to use easements appurtenant to the dominant estate, provided the easements can be enjoyed as to the separate parcels without any additional burden on the servient tenement."); Jon W. Bruce James W. Ely, Jr., The Law of Easements and Licensesin Land ¶ 8.033 (1995) ("Unless restricted by the terms or manner of its creation, the right to use an easement appurtenant extends to each subdivided portion of the dominant estate."). This is true even if the deeds creating thesubdivisions do not expressly mention the easement. Carbon v.Moon, 68 Idaho 385, 392, 195 P.2d 351, 355 (1948) ("And the general rule is that, where an easement is annexed to land, either by grant or prescription, it passes as an appurtenance with the conveyance `of the dominant estate, although not specifically mentioned' in the deed, or even without the use of the term `appurtenances,' `unless expressly reserved from the operation of the grant.'"); see also Baker v. Pike, 41 P.3d 537, 542 (Wyo. 2002) ("`An easement appurtenant is transferred with possession of the dominant property even if it is not mentioned in the document of transfer.'"); 25 Am.Jur.2dEasements and Licenses § 91 (2004) ("Unless expressly excepted, a transfer of real property passes all easements appurtenant thereto, even though not referred to in the instrument of transfer.").
A right-of-way created by conveyance in "general terms and without any restrictions on its use" is to be "construed as broad enough to permit any use which is reasonably connected with the reasonable use of the land to which it is appurtenant."Birdsey v. Kosienski, 140 Conn. 403, 412-13,101 A.2d 274, 278 (1953); see also Restatement (Third) ofProperty § 4.10 (2000). "If the language of the [conveyance] is clear and free from doubt, such language is not the subject of interpretation. If subject to interpretation, the extent of the easement depends on the intention of the parties as gathered from the terms of the deed and the situation of the land." Cobb v. Allen, 460 So.2d 1261, 1264 (Ala. 1984). Application of these rules compels the conclusion that the right of ingress and egress over the Lane is appurtenant to the property in the Van Wezels' chain of title, and, therefore, exists for the benefit of Wolf Creek and its successors in title.
Reference to the easement initially appeared in the deed from the Walkers to the Triches, the Weekses' predecessors in title. By that conveyance, the Walkers disposed of all their land west of Spring Branch, leaving their considerable acreage east of Spring Branch without access to County Road 49. That loss was overcome by the reservation in the deed to a "private *Page 271 
lane across [the Weekses' land] and along the North bank of the Magnolia River." The dominant tenement created by that conveyance was composed of all the land the Walkers stillowned east of Spring Branch. Each subsequent subdivision of the dominant tenement was benefited, as a matter of law, by the easement.
This result could hardly have been unintended by the creators of the servitude. The reservation does not purport to limit the Walkers' right of subdivision. Indeed, the Walkers had begun subdividing their property east of Spring Branch before
they conveyed the property west of Spring Branch to the Triches.
Moreover, the Weekses can hardly contend that subdivision of the Walkers' property was unforeseeable to them. By the time they purchased their property in 1991, most of the area now constituting The Commons had already been platted, subdivided, and sold as Magnolia Springs Estates, and its residents were using the Lane. Moreover, the Weekses' own deed describes the Lane as "an easement for a road right of way . . . that affords ingress and egress to ownership lying East of SpringBranch, to and from County Highway No. 49." (Emphasis added.)
Because the Lane was intended to benefit the Walkers' land lying east of Spring Branch, as subdivided after the creation of the easement, the absence of a specific reference to the easement in the chain of title to most of the land constituting The Commons is immaterial. Thus, the trial court did not err in concluding that "the owners of The Commons, as the same now exists," have an express easement appurtenant over the Lane. The judgment insofar as it so holds — as it is challenged in case no. 1041189 — is affirmed. We turn, therefore, to the issues presented in the cross-appeal.
 III. Case No. 1041264
The dispositive issue presented by the cross-appeal is whether the trial court erred in enjoining use of the Lane to the extent of the restrictions imposed in its order.
 A. Standard of Review
"The applicable standard of review [of injunctive relief] depends on whether the trial court entered a preliminary injunction or a permanent injunction. A preliminary injunction is reviewed under an abuse-of-discretion standard, whereas a permanent injunction is reviewed de novo." TFT, Inc. v.Warning Sys., Inc., 751 So.2d 1238, 1241-42 (Ala. 1999); see also Smith v. Madison County Comm'n, 658 So.2d 422, 423
n. 1 (Ala. 1995). The restrictions placed upon Wolf Creek's use of the Lane constitute a permanent injunction. Therefore, our standard of review is de novo.
 B. Analysis
All parties challenge the trial court's injunctive relief. The Weekses argue that the relief was inadequate. More specifically, they argue that the trial court erred in failing to furtherlimit the use of the Lane to the owners of units located on property acquired by Wolf Creek in the chain of title of Dr.Owens, which comprises only units 33 and 34 of The Commons as it currently exists. They insist that, restrictions notwithstanding, the use allowed by the trial court "results in overburdening of the easement." Weekses' brief, at 25. Wolf Creek, on the other hand, argues that no restrictions were warranted, and we agree. The injunctive relief granted by the trial court is contrary to a number of well-established legal principles.
First, "the owner of the servient estate [ordinarily] has the burden of proving overburdening because the servient owner has asserted overburdening as a *Page 272 
cause of action or as a reply to a special defense of an easement when the purpose of the easement is not in dispute."Zhang v. Omnipoint Communications Enters., Inc.,272 Conn. 627, 640 n. 8, 866 A.2d 588, 596 n. 8 (2005). See alsoShooting Point, L.L.C. v. Wescoat, 265 Va. 256, 266,576 S.E.2d 497, 502 (2003); and Logan v. Brodrick, 29 Wash.App. 796, 800, 631 P.2d 429, 432 (1981).
Second, as a general rule, an increase in traffic over an easement in the process of normal development of the dominant estate, in and of itself, does not overburden a servient estate.Gutcheon v. Becton, 585 A.2d 818, 822 (Me. 1991);Downing House Realty v. Hampe, 127 N.H. 92,497 A.2d 862 (1985); Shooting Point, L.L.C, 265 Va. at 267,576 S.E.2d at 503; Bruce Ely, ¶ 8.031; andRestatement (Third) of Property § 4.10, comment f (2000). Ordinarily, to support a finding of overburdening, it must be shown that the use has changed in kind, rather than extent. Shooting Point, L.L.C, 265 Va. at 267,576 S.E.2d at 503 (an increase in traffic over the servient estate "demonstrates only an increase in degree of burden, not an imposition of an additional burden, on the servient estate"). See also Blalock v. Conzelman,751 So.2d 2 (Ala. 1999).
Relevant factors include evidence of an abrupt or "abnormal" change in the development of the dominant estate and resulting use of the easement. Glenn v. Poole, 12 Mass.App. 292,295, 423 N.E.2d 1030, 1033 (1981) ("In the law of easements, a mutation is not within the scope of normal development."). A relevant showing might also be made of burdens such as "(1) decreased property value; (2) increased noise and traffic or interference with the servient owner's peace and enjoyment of the land; and (3) physical damage to the servient estate."Burkhart v. Jacob, 976 P.2d 1046 (Okla. 1999). See alsoSmith v. Fulkroad, 305 Pa.Super. 459, 463,451 A.2d 738, 740 (1982) (a significant increase in "dust, dirt and noise" was a material factor in determining that there had been "a marked transformation in the former peaceful enjoyment" of the property). Moreover, the use of the easement by owners of property other than a subdivision of the dominant tenement — even property acquired by the dominant-tenement owner after creation of the servitude — overburdens the servient estate as a matter of law. Il Giardino, LLC v.Belle Haven Land Co., 254 Conn. 502, 516, 757 A.2d 1103,1113 (2000); Bruce Ely, ¶ 8.032; see also Watsonv. Lazy Six Corp., 608 So.2d 389 (Ala. 1992); Loveman v.Lay, 271 Ala. 385, 124 So.2d 93 (1960); and McLaughlinv. Selectmen of Amherst, 422 Mass. 359, 664 N.E.2d 786
(1996).
Third, unless expressly restricted, the use of an easement appurtenant is not limited to the owners of the dominant estate, but also inures to the benefit of their tenants, "servants, agents, or employees in conducting [their] business," 28A C.J.S. Easements § 164 (1996), as well as social and business invitees, Gowen v. Cote,875 S.W.2d 637, 641 (Mo.Ct.App. 1994); and Picardi v. Zimmiond,693 N.W.2d 656, 664 (S.D. 2005), which includes use by utility workers and "utility company service vehicles."
These principles afford no basis for an order limiting the use of the Lane strictly to the owners of property in The Commons and the relatives of the owners. The use must alsoextend to their employees and agents, as well as social guests and business invitees, such as "those providing repairs or maintenance, utility or government employees." Although there was testimony that Wolf Creek had permitted *Page 273 
Hap Archer, a nonresident of The Commons, to use the Lane, there was no evidence indicating that Archer did not own some property in the chain of title of the original dominantestate.
Similarly, there is no legal basis for restricting the use of the Lane to "passenger vehicle[s]," or for prohibiting travel over the Lane to deposit sacked garbage at "a collection point" at the edge of County Road 49. There was no evidence indicating that garbage was being placed upon the Lane itself and it was undisputed that garbage trucks were not
traveling over the Lane to pick up garbage inside The Commons. On the contrary, the testimony was that residents ofboth the dominant and servient estates hadtraditionally hauled their residential trash over the Lane for deposit and pickup at the edge of County Road 49. Thus, the only evidence was that such use constituted normal, gradual, and foreseeable development of the dominant estate.
In that connection, although Mr. Weeks testified that traffic had "increased dramatically" during the "construction phase of The Commons," he stated that, following the completion of construction, "the travel [had] reduced down," and that he did not know the number of vehicles currently using the Lane. Indeed, the undisputed testimony was that the Lane does not afford The Commons its primary means of ingress and egress, but that The Commons is primarily accessed from Highway 98, north of The Commons. There was no evidence indicating that dirt or debris was being thrown onto the servient estate or indicating loss of property value or interference with any business or personal enterprise on the Weekses' property.
In short, the only evidence presented as to current use of the Lane was of an unspecified increase in the volume of traffic. There was, therefore, no legal basis for the order authorizing the Weekses to construct and maintain gates across the Lane or to otherwise restrict the normal use of the Lane by Wolf Creek.Gutcheon v. Becton, 585 A.2d at 822; Downing HouseRealty v. Hampe, 127 N.H. 92, 497 A.2d 862 (1985);Shooting Point, L.L.C., 265 Va. at 267,576 S.E.2d at 503; Bruce Ely, ¶ 8.031; and Restatement (Third)of Property § 4.10, comment f (2000). Insofar as it grants the injunctive relief, the judgment is reversed, and a judgment is rendered in favor of Wolf Creek.
 IV Summary
In summary, the judgment — as it is challenged in case no. 1041189 — is affirmed. However, because the trial court erred in granting injunctive relief, we reverse the judgment — as it is challenged in case no. 1041264 — and render a judgment in favor of Wolf Creek.
1041189 — AFFIRMED.
1041264 — REVERSED AND JUDGMENT RENDERED.
NABERS, C.J., and SEE, SMITH, and PARKER, JJ., concur.
LYONS, J., recuses himself.
[1] This case involves no issue regarding the right of Wolf Creek to use the portion of the Lane lying east of Spring Branch.