MURDOCK, Justice
(dissenting).
By the express terms of the deed by which Perdido Place, LLC, created and conveyed the easement at issue, the easement was created to be appurtenant only to the one-acre lot purchased by P & C Properties, LLC, from David Cummans. That easement is now to be used, however, by individuals who will not be occupants of a condominium unit located in whole or even in substantial part on this one-acre lot.
As the main opinion points out, the following principle, as stated by this Court in Weeks v. Wolf Creek Industries, Inc., 941 So.2d 263 (Ala.2006), is indeed an accurate statement of the law:
“ ‘[T]he use of [an] easement by owners of property other than a subdivision of the dominant tenement — even property acquired by the dominant-tenement owner after creation of the servitude— overburdens the servient estate as a matter of law. Il Giardino, LLC v. Belle Haven Land Co., 254 Conn. 502, 516, 757 A.2d 1103, 1113 (2000); [John W.] Bruce & [James W.] Ely[, Jr., The Law of Easements and Licenses in Land ], ¶ 8.03[2] [ (1995) ]; see also Watson v. Lazy Six Corp., 608 So.2d 389 (Ala.1992); Loveman v. Lay, 271 Ala. 385, 124 So.2d 93 (1960); and McLaugh *1209 lin v. Selectmen of Amherst, 422 Mass. 359, 664 N.E.2d 786 (1996).’ ”
43 So.3d at 1205 (quoting Weeks, 941 So.2d at 272 (emphasis added)). Although this principle, at least as stated in Weeks, uses the term “overburdens” — a term that suggests a quantitative concern — the issue is in fact a qualitative one. That is, it is a question of property rights — of whether a party has any right whatsoever to use a given easement.
The main opinion reasons that the present case differs from Loveman v. Lay, 271 Ala. 385, 124 So.2d 93 (1960), “inasmuch as it is impossible to state that any use of the beach-access easement by Bella Luna owners would not be for the benefit of property within the dominant tenement.” 43 So.3d at 1206. The main opinion is able to say this not because every use of the easement will be by someone occupying a condominium unit located in whole or in part on the one-acre tract, but because even owners and residents of units not physically located on the one-acre tract will benefit from the arrangement by which the owner of each condominium is to be deeded an undivided ownership interest in some portion or portions of the one-acre tract to be designated as “common areas.” It is by way of such an arrangement that the owners, and in turn the tenants, of units not located in any meaningful way on the property intended to be benefited by the easement purport to acquire a legal right to that easement. The operative principle, as stated in Loveman itself (the same fundamental principle as quoted above from Weeks), is at odds with this result:
“If the grant is for the benefit of some particular land it can not be used to accommodate some other tract of land adjoining or lying beyond. ‘ “One having a right of way appurtenant to certain land can not use it for the benefit of other land.” ... “If a man have a private way to a close, he must not enlarge it to other purposes.” ... “Private ways are confined in their use to the purposes for which they are granted, and cannot be extended by the grantees. When intended to give access only to particular premises, they cannot be used thereby to reach other lands.” ’ West v. Louisville & Nashville Railroad Co., 137 Ala. 568, 34 So. 852, 853 [ (1903) ]; 28 C.J.S. Easements § 92, p. 772; 17A Amer. Jur., § 115, p. 723.”
271 Ala. at 392-93, 124 So.2d at 99 (emphasis added). Adherence to this straightforward principle, I submit, requires an acknowledgment that to the extent the easement in question will, as a result of our decision today, be used for the benefit of property other than that to which the deed creating it makes it appurtenant, its use will exceed the right conveyed by that deed.
The main opinion specifically seeks to distinguish this case from Loveman by relying on the fact that “the Bella Luna owners all have an undivided ownership interest in the Bella Luna common areas, and it is undisputed that some of those common areas are located on the tract of land originally conveyed by Cummans to P & C and to which the easement is appurtenant.” 43 So.3d at 1206. There being no ambiguity in the deed by which the easement was created in this case, this Court must be governed by the intent of the grantor as objectively manifested in the language of the deed.[3] I see no basis in *1210 the language of that deed from which to conclude that the grantor intended for its property to be burdened and the easement in question to be used by individuals who have no substantial occupancy right in the one-acre tract, itself, but who simply have some undivided interest in some portion of the one-acre tract that has been carved out for use as a “common area” for the benefit of the owners and residents of other property, as well as owners and residents of the one-acre tract itself. Under this derivative-benefit approach sanctioned by the Court today, a developer could obtain an easement to benefit a one-acre tract of land, as occurred in this case, and then proceed to obtain not merely an additional 2.5 acres, but perhaps dozens of acres or more of adjacent land, which it would sell or lease to an unknown number of additional owners or tenants. To each such owner or tenant, the developer could convey an undivided ownership interest in some small portion of the one-acre tract, and thereby parlay the use of the easement and the burden on the servient estate well beyond that contemplated by the terms of the original conveying instrument. At some point, presumably depending upon the density of development of the adjacent property and the frequency of use of the easement by its owners and residents, the owner of the servient tenement may be able to argue that its property is being overburdened “in fact.” The Court’s decision today, however, deprives the owner of its rightful claim to overburdening “as a matter of law.” I submit that this is a change that not only deprives that landowner of well established real-property rights, but also, on a practical level, yields less protection, more uncertainty, and a greater chance of litigation as a result of that uncertainty.
Again, the original conveying instrument in the present case contemplated a burden on the servient estate for the purpose of benefiting a 1-acre tract of land, not a 3.5-acre tract of land. In allowing the burden to be increased several times over, this Court has imposed on the owner of the servient estate a burden that it never assumed.
The main opinion concludes that “while it was possible in Loveman to state conclusively that the disputed use of the easement was prohibited because that use clearly was for the sole benefit of property outside the dominant tenement, we cannot do the same in this case....” 43 So.3d at 1206. Any attempt to distinguish Love-man on the ground that the easement at issue there solely benefited property outside the dominant tenement misses the mark. The operative principle in Love-man was that the easement could not burden the servient tenement for the benefit of property outside the dominant tenement. Yet, that is what the decision by this Court today clearly allows.
Likewise, the main opinion concludes that “we cannot say that the use of the beach-access easement by the BLCOA overburdens the servient estate ... as a matter of law.” 43 So.3d at 1206. I believe we can.
Finally, I specifically disagree with the affirmance of the trial court’s use of what it refers to as the “comparative injury doctrine” and the balancing of equities. *1211 The outcome in this contest over property rights is and should be governed by the language of the deed in question.
“[T]he right to control one’s property is a sacred right which should not be taken away without urgent reason.” Smith v. Smith, 254 Ala. 404, 409, 48 So.2d 546, 549 (1950). It is for the protection of this right that the Statute of Frauds requires, for the conveyance of real property, a written instrument by which the grantor objectively manifests his intent to give up an interest in or to place a burden upon his property. Because I do not believe Perdido Beach, LLC, has done this to the extent declared by the trial court, whose judgment is affirmed today by this Court, I respectfully dissent.

. "The law in Alabama is well settled: '[T]he Court must look to the written instrument to determine the scope of the grant.’ City of Montgomery v. Maull, 344 So.2d 492, 495 (Ala.1977). In construing the granting instrument to ascertain the intention of the parties, the plain, clear meaning of its terms must be given effect, and 'the parties must be legally *1210 presumed to have intended what is plainly and clearly set out.’ Camp v. Milam, 291 Ala. 12, 16, 277 So.2d 95, 98 (1973). Accord, Financial Investment Corp. v. Tukabatchee Area Council, Inc., Boy Scouts of America, 353 So.2d 1389 (Ala.1977). The court cannot look beyond the ‘four corners of the grant to construe its terms unless the court determines that the language or its meaning is ambiguous.’ Camp, supra."
Kerrigan v. Sherrer, 535 So.2d 74, 75 (Ala.1988).