PER CURIAM.
CraneWorks, Inc. ("CraneWorks"), and its owners, David Upton ("David") and Steve Upton ("Steve"), and Russell Brooks, Rick Yates, and Casey Markos (all hereinafter collectively referred to as "the defendants") filed two appeals challenging the entry by the Jefferson Circuit Court ("the trial court") of a permanent injunction against them and in favor of RPM Cranes, LLC ("RPM"), and Muhammad Wasim Ali, the owner of RPM. We reverse the trial court's judgment and remand the case.
Facts and Procedural History
The basic facts underlying these appeals are well summarized in the "Findings of Fact" in the trial court's final order of August 25, 2015.[1]
"Based on the information presented by the parties via affidavit and live testimony, the court makes the following findings of fact:
"A. The Creation of RPM
"The Plaintiff, Muhammad Wasim Ali ('Dr. Ali')[2] , is the sole owner of RPM Cranes, LLC ('RPM'). Defendants Russell (Rusty) Brooks ('Brooks') and Rick Yates ('Yates'), along with RPM's current General Manager Patrick Watson ('Watson'), all of whom testified at the hearing, started RPM in 2008 with financial backing from Dr. Ali (who was not present at the hearing). Neither Dr. Ali nor Watson had any prior experience in or knowledge of the crane industry. By contrast, Brooks and Yates had many years of experience in the crane industry, having previously worked for both Birmingham Steel and CraneWorks. Brooks and Yates had many contacts in the crane industry and brought those contacts with them to RPM. Brooks served as RPM's Operations Manager and Yates was its Sales Manager.
"B. Brooks'[s] and Yates'[s] Employment Agreements
"When the company began, Brooks and Yates understood they would become equity owners of the company within five (5) years. Prior to the expiration *563 of that five (5) year period, however, Dr. Ali demanded they either buy in to the company at a cost of one million dollars ($1,000,000.00) each or remain employees of the company. Without the resources to make such an investment, Brooks and Yates agreed to remain with RPM as employees. At that time, RPM presented them with employment agreements that contained restrictive covenants pertaining to competition.
"[RPM and Ali] attached copies of Brooks'[s] and Yates'[s] employment agreements to their Complaint as Exhibits B and C. The employment agreements included, inter alia, anon-competition/non-solicitation provision limiting Brooks and Yates from working for a competing business for a period of two years and prohibiting Brooks and Yates from soliciting RPM's customers served within twenty-four (24) months prior to the date their employment with RPM ended.
"The employment agreements also included RPM's commitment to provide employee benefits to Brooks and Yates in the same manner provided to all other employees. Watson testified that most RPM employees are union members and that RPM is obligated to make contributions to the union, on behalf of the union employees, for the employees' health and pension benefits. During his employment with RPM, Brooks was a union member and relied on RPM to make contributions to his health and pension plans via the union. At the request of RPM, Yates withdrew from the union in 2011. With his union withdrawal came RPM's responsibility (admitted by Watson on cross-examination) to pay for Yates'[s] health and pension benefits, in the same way RPM paid for Watson's health and pension benefits. RPM did not pay for Yates'[s] pension benefits for a period of nineteen (19) months-from August 29, 2011 through April 9, 2013-resulting in zero contributions to Yates'[s] pension for that entire period.
"C. Markos'[s] Employment With RPM
"Defendant, Casey Markos ('Markos'), was hired at RPM in 2008 as an oiler, later became a crane operator, and became a salesperson in 2013. Per Markos, Watson asked him to sign a non-compete agreement when Markos became a salesperson in 2013, and Markos declined. Watson testified that he witnessed Markos sign the agreement, but admits that neither he nor RPM have the original agreement bearing Markos'[s] signature. Instead, [RPM and Ali] have presented as Exhibit D to the Complaint a copy of an agreement that appears (even to Markos) to bear Markos'[s] signature. Markos testified that he does not know how his signature was affixed to the non-compete [agreement] and is emphatic that he did not sign the document.
"Watson admits that nothing was offered to Markos in exchange for signing the non-compete [agreement], and the purported agreement does not state that any consideration was provided. The agreement that Markos allegedly signed contains a different restriction than the one in Brooks'[s] and Yates'[s] employment agreements, and prohibits 'Employee' from working for any company 'engaged in the business of rental.' Exhibit D to the Complaint does not specify that Markos was restricted from working in the crane rental business. Like Brooks, Markos was a union member during his employment with RPM, relying on RPM to make contributions to the union for his health and pension benefits.
"D. Events Leading to the Resignation of Brooks, Markos, and Yates *564 "In 2015, a number of incidents occurred that led Brooks, Markos, and Yates to believe that RPM was in financial and reputational disarray and to fear that the company would soon close its doors. The men testified (via live testimony and affidavit) that company credit cards were declined on a number of occasions, including credit cards needed to provide fuel for cranes that were located at existing job sites. Salespeople and operators used their personal credit cards to either fuel machinery or pay for overnight hotel stays while on out-of-town jobs. Salespeople were instructed not to spend money on company marketing (including lunches, a primary way salespeople maintain contact with their customers and learn of future crane opportunities).
"In March 2015, Dr. Ali was arrested on federal drug charges, and he was indicted the following month. As part of the indictment, some RPM assets and bank accounts were seized and/or frozen. On June 1, 2015, RPM filed for Chapter 11 bankruptcy protection, where [RPM] remains today.[3 ] Dr. Ali's arrest and indictment, as well as RPM's bankruptcy, received media attention, and Brooks, Markos, and Yates received questions from concerned customers about these incidents.
"In mid-June 2015, Brooks, Markos, and Yates learned RPM had not made payments to the union for the health and pension benefits of any of RPM's union employees, including but not limited to Brooks and Markos, since at least February 2015. RPM admits that it did not make these payments despite its obligation to do so. Approximately six crane operators then resigned their employment with RPM. Brooks, Markos, and Yates knew that a lack of crane operators would result in an inability to service client crane needs. That fact, compounded with the financial problems RPM was experiencing (Yates'[s] last four paychecks were drawn from four different banks), as well as the reputational issues associated with Dr. Ali's arrest and indictment, and the company's bankruptcy petition, led Brooks, Markos, and Yates to feel they had no choice but to leave RPM. RPM had not made required payments to Yates'[s] pension plan, nor had it made required contributions to the union for Brooks'[s] and Markos'[s] health and pension benefits. Brooks, Markos, and Yates feared that the company's financial condition would cause it to close its doors at any moment, leaving them without a job and unable to pay their bills and support their families. These employees further believed their personal reputations in the crane industry had been and would continue to be damaged by their affiliation with RPM, and they needed to ensure that the customers with whom they had developed relationships over many years in the industry received proper service. Accordingly, Brooks and Yates submitted their resignations on June 16, 2015 and Markos submitted his resignation the following day. All three men were hired by CraneWorks, where Brooks and Yates had worked prior to starting RPM."
On July 15, 2015, RPM and Ali sued the defendants, alleging that Brooks, Yates, and Markos had violated their employment agreements by going to work for CraneWorks *565 and that CraneWorks' hiring of Brooks, Yates, and Markos likewise violated those employment agreements. David and Steve were named as defendants by virtue of their ownership of CraneWorks. RPM and Ali sought monetary damages and injunctive relief.
Along with their complaint, RPM and Ali filed a motion for a temporary restraining order ("TRO") and a request for a preliminary injunction. Following an ex parte hearing on the motion, the trial court granted the request for a TRO on July 16, 2015. The order stated, in pertinent part, that "[t]he [d]efendants are hereby temporarily restrained and enjoined from contacting, in any manner whatsoever, any of the former or current clients of RPM." CraneWorks filed a motion to dissolve the TRO in which it observed, among other things, that counsel for RPM and Ali had informed counsel for CraneWorks that RPM and Ali did not intend to obtain a TRO against CraneWorks. RPM and Ali did not dispute that assertion.
On July 23, 2015, the trial court entered an order modifying the TRO to clarify that it did not apply to CraneWorks, David, or Steve but that it remained in place as to Brooks, Yates, and Markos. The trial court also set a date for a hearing on RPM and Ali's request for a preliminary injunction.
On August 19, 2015, the trial court held a hearing on the motion for a preliminary injunction in which it accepted evidentiary submissions and heard testimony from Patrick Watson, RPM's general manager, and from Brooks, Yates, and Markos. During the hearing, when counsel for CraneWorks indicated that he wanted to cross-examine Watson, counsel for RPM and Ali objected:
"[Counsel for RPM and Ali]: Your Honor, if I may, counsel represents CraneWorks.
"THE COURT: Is CraneWorks a party?
"[Counsel for RPM and Ali]: CraneWorks on this is no longer involved, because we did away with their TRO on them.
"THE COURT: So CraneWorks isn't being-is CraneWorks a party to the complaint?
"[Counsel for RPM and Ali]: To the complaint, yes, sir.
"THE COURT: All right. Well, they-
"[Counsel for RPM and Ali]: As far as that involves this at the last meeting we had, the order did away with them being involved with any of the TRO or the restraining order at all.
"THE COURT: Yeah. Response?
"[Counsel for CraneWorks]: Your Honor, if he wants to dismiss all claims against CraneWorks and the owners, the Uptons; then I don't need to be at this hearing. But right now we're being sued by this company. Our employees are currently being restrained from doing work for us.
"THE COURT: All right. Have you got questions concerning the TRO or preliminary injunction?
"[Counsel for CraneWorks]: I have a few follow-[up] questions for Mr. Watson.
"THE COURT: Go right ahead."
On August 25, 2015, the trial court entered the order from which we have already quoted the findings of fact. In the "Legal Analysis" portion of that order, the trial court reviewed each of the elements of a preliminary injunction under separate headings. The first heading states: "Plaintiffs Did Not Prove Irreparable Injury." In this section, the trial court observed:
"With respect to the enforcement of noncompetition agreements against a *566 former salesperson, the Alabama Supreme Court has adopted a rebuttable presumption of irreparable injury where the employer can establish three prima facie elements: (1) the existence of a valid noncompetition agreement, (2) a protectable interest of the employer, (3) and a violation of the former employee salesperson's noncompetition agreement by 'actively competing with his or her former employer in the same geographic area.' Ormco [Corp. v. Johns ], 869 So.2d [1109,] 1118-19 [ (Ala. 2003) ]. Plaintiffs have not met this burden."
The trial court then examined each of the three prima facie elements of irreparable injury presumed to stem from a noncompetition agreement. The trial court concluded that RPM and Ali "have not demonstrated the existence of valid noncompetition agreements." With respect to Yates and Brooks, the trial court reasoned: "By failing to pay for Yates'[s] pension benefits and failing to make contributions to Brooks'[s] health and pension plans via the union, RPM breached the employment agreements with Brooks and Yates and did not provide the consideration necessary to support the agreement." As for the agreement with Markos, the trial court stated:
"Markos expressly denies signing the document attached as Exhibit D to the Complaint, and [RPM and Ali] have been unable to produce the original document.
"Even if Markos signed the document attached as Exhibit D to [RPM and Ali's] Complaint, it fails for lack of consideration. Not only does the agreement itself fail to list any consideration provided by RPM to Markos in exchange for the non-competition agreement, but both Markos and Watson confirmed that nothing was offered to Markos as an inducement to sign the agreement."
The trial court further concluded that the noncompetition agreement between Markos and RPM "violates Ala. Code [1975,] § 8-1-1, as a restraint on trade" because it was not limited to a geographic area and it prohibited Markos from working for any company "engaged in the business of rental," rather than restricting him from working for other "crane rental" businesses, which was the only type of rental services RPM offered.
As to the second element necessary for irreparable injury to be presumed based on a noncompetition agreement, the trial court concluded that RPM and Ali
"presented no evidence of any protectable interest. Indeed, [RPM and Ali] offered no testimony or other evidence that any of the customers served by the company were developed during [Brooks's, Yates's, and Markos's] employment with RPM, using RPM resources. The only testimony on this topic was from Yates, who, without cross-examination by [RPM and Ali], testified that he had preexisting contacts and customers that he brought with him to RPM, and that Yates and Brooks taught Dr. Ali and Watson about the crane business not vice versa. ... Here, [RPM and Ali] have not established that they have a protectable interest in customers served by Brooks, Markos, and/or Yates, nor that they have a unique or substantial right that warrants protection."
The trial court further noted that, "[e]ven if [RPM and Ali] had established irreparable injury, Brooks, Markos and Yates rebutted that assertion via evidence showing alternate reasons for such injury," namely "Ali's indictment, RPM's bankruptcy, or because the company no longer had sufficient crane operators to provide necessary services." The trial court also observed that "the undisputed affidavits submitted in this case demonstrate that customers in *567 need of crane rental services often select their rental company based on the availability of a specific piece of needed equipment, not solely on a relationship with a particular company or salesperson."
Despite all the evidence against finding any protectable interest on the part of RPM and Ali, at the end of the trial court's discussion of irreparable injury, the trial court stated: "[I]t does stand to reason that since [Brooks, Markos, and Yates] helped to create RPM ..., then some of the clients were developed as a result of [Brooks's, Markos's, and Yates's] relationship with RPM .... Therefore, RPM ... does show a minuscule protectable interest."
Continuing with the next element required for establishing the need for a preliminary injunction, the trial court's heading states: "[RPM and Ali] Have an Adequate Remedy at Law." In this section, the trial court observed:
"The only testimony presented as to [RPM and Ali's] alleged damage was Watson's testimony that RPM allegedly lost 'millions' of dollars since the departures of Brooks, Markos, and Yates. [RPM and Ali] offered no proof of such loss, nor have they established that said loss was solely, or even in part, attributable to Brooks, Markos, and Yates'[s] departure. More importantly, if, as [RPM and Ali] claim, their only damage is monetary, then they have an adequate remedy at law and an injunction is not appropriate. ... To the extent [RPM and Ali] have been damaged in any other way, they have not offered evidence to so demonstrate, and have therefore failed to meet their burden of establishing an inadequate remedy at law."
The next heading in the trial court's order states: "[RPM and Ali] Do Not Have a Reasonable Chance of Success on the Merits." In this section of the order, the trial court reasoned that because of "the invalidity of Markos'[s] alleged non-competition agreement and RPM's breach of its own obligations under the other two employment agreements, [RPM and Ali] cannot demonstrate a reasonable chance of success on the merits."
The final heading of the trial court's order states: "The Hardship Imposed on Brooks, Markos, and Yates Would Unreasonably Outweigh the Benefit Accruing to [RPM and Ali]." In this section, the trial court noted:
"Brooks, Markos, and Yates testified that the crane industry is what they know and what they have spent their careers learning. Prohibiting them from working in the crane industry would, effectively, prohibit them from working, resulting in financial burdens on these men and their families. ... Defendants Brooks, Markos, and Yates live paycheck to paycheck. Their trade is a single industry. To prohibit them from working (particularly when there are alternative methods of redress for any potential violation of any valid agreement) would impose an undue burden that cannot be surpassed by [RPM and Ali's] articulation of any alleged monetary damage."
In spite of all the foregoing analysis, at the conclusion of its order the trial court entered a permanent injunction in favor of RPM and Ali and against the defendants. In pertinent part, the injunction provided:
"For the foregoing reasons, [RPM and Ali's] motion for preliminary injunction is hereby GRANTED, but only as follows:
"1. The Defendants are hereby permanently restrained and enjoined from contacting, in any way whatsoever, any of those clients which are now clients of RPM Cranes.
*568 "2. This permanent injunction does not extend to enjoining or restraining the aforementioned clients from becoming clients of Crane[W]orks of their own volition; but, rather extends only to enjoin and restrain Crane[W]orks or its employees and assigns, from contacting in any way whatsoever, the aforementioned clients.
"3. The limitations this court previously imposed on Defendants Brooks, Markos, and Yates via the entry of a Temporary Restraining Order (and its amendment) are now expired and expressly lifted, except as delineated in Paragraph 2 above.
"....
"5. This case is hereby DISMISSED with prejudice. Costs taxed as paid."
(Capitalization in original.)
CraneWorks, David, and Steve, on the one hand, and Brooks, Markos, and Yates, on the other, filed separate timely appeals from the trial court's August 25, 2015, order. This Court consolidated those appeals for the purpose of writing one opinion.
Standard of Review
" 'The applicable standard of review [of an order granting injunctive relief] depends on whether the trial court entered a preliminary injunction or a permanent injunction. A preliminary injunction is reviewed under an abuse-of-discretion standard, whereas a permanent injunction is reviewed de novo.' TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1241-42 (Ala. 1999) ; see also Smith v. Madison County Comm'n, 658 So.2d 422, 423 n. 1 (Ala. 1995)."
Weeks v. Wolf Creek Indus., Inc., 941 So.2d 263, 271 (Ala. 2006). Although the trial court analyzed RPM and Ali's motion for an injunction as seeking a preliminary injunction, the restrictions placed upon the defendants constitute a permanent injunction. Therefore, our standard of review is de novo.
Discussion
The defendants' arguments are straightforward and compelling. The defendants observe that, in its order, the trial court concluded that none of the elements required for a preliminary injunction favored RPM and Ali. The trial court's order explained in detail that RPM and Ali failed to demonstrate 1) that they had sustained an irreparable injury; 2) that they had an adequate remedy at law; 3) that they had a likelihood of success on the merits; and 4) and that the hardships imposed by an injunction upon Brooks, Yates, and Markos "unreasonably outweigh[ed]" the benefits that would accrue to RPM and Ali. Every aspect of the trial court's order favored the defendants, yet the trial court granted RPM and Ali's request for an injunction. The trial court's order provides no basis for imposing any injunction-preliminary or permanent-against the defendants. See TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1242 (Ala. 1999), overruled on other grounds by Holiday Isle, LLC v. Adkins, 12 So.3d 1173, 1176 (Ala. 2008) ("The elements required for a preliminary injunction and the elements required for a permanent injunction are substantially similar, except that the movant must prevail on the merits in order to obtain a permanent injunction, while the movant need only show a likelihood of success on the merits in order to obtain a preliminary injunction. Pryor v. Reno, 998 F.Supp. 1317 (M.D. Ala. 1998).").
Moreover, concerning CraneWorks and David and Steve specifically, the actions of the trial court with respect to the TRO as well as the above-quoted statements by RPM and Ali's counsel during the course of the hearing on the motion for a preliminary *569 injunction indicated that RPM and Ali did not intend to seek an injunction against CraneWorks, David, or Steve. Because no contractual obligation existed between RPM and CraneWorks, David, or Steve, there also was no legal basis for imposing an injunction against CraneWorks, David, or Steve.
Beyond all of this, the defendants observe that the injunction order itself fails to comply with Rule 65(d)(2), Ala. R. Civ. P., which provides:
"(2) Every order granting an injunction shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."
Specifically, the defendants note that the order does not provide any reasons why an injunction should be imposed upon them; instead, it does the opposite by stating an extensive number of reasons why RPM and Ali's request for an injunction should fail. They also observe that the injunction is not specific in its scope. The order states that the defendants are "permanently restrained and enjoined from contacting, in any way, whatsoever, any of those clients which are now clients of RPM Cranes." The order fails, however, to specify which clients are included in the injunction. Trey Fulton, chief financial officer of CraneWorks, testified by affidavit that CraneWorks did not know who RPM's clients were or which of its clients were not also clients of CraneWorks. RPM and Ali introduced no evidence as to who RPM's clients were or whether it had developed any clients of its own that Yates and Brooks did not bring onboard as a result of their previous jobs with other entities. In other words, the injunction is broad and vague rather than "specific in [its] terms."
Conclusion
Based on the foregoing, we reverse the trial court's order and remand the matter for further proceedings consistent with this opinion.
1150018-REVERSED AND REMANDED.
1150028-REVERSED AND REMANDED.
Stuart, C.J., and Parker, Shaw, Wise, and Sellers, JJ., concur.

We note that the defendants in their appellate briefs to this Court do not take issue with the trial court's summary of the facts and, in fact, quote extensively from it. RPM and Ali have not filed appellee's briefs in these appeals.

Ali is a medical doctor.

We note that the automatic-stay provision in the Bankruptcy Code, 11 U.S.C. § 362, applies only to "the commencement or continuation ... of a judicial ... action or proceeding against the debtor." (Emphasis added.) The action underlying these appeals was filed by RPM.